DAIMLERCHRYSLER CORPORA-TION (f/k/a Chrysler Corporation), Chrysler Corporation and Chrysler, Appellants,

v.

Bill L. INMAN, David Castro and John Wilkins, each individually and On Behalf of all Others Similarly Situated, Appellees.

No. 13–02–415–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Nov. 20, 2003.

Audrey Mullert Vicknair, Roberta J. Hegland, Bracewell & Patterson, L.L.P., Corpus Christi, Charles A. Newman, Kathy A. Wisniewski, St. Louis, Mike A. Hatchell, Molly H. Hatchell, Hatchell P.C., Tyler, Rey Rodriguez, Richard A. Smith, Gibson, Dunn & Crutcher, William V. Dorsaneo III, Dallas, Theodore J. Boutrous Jr., Gibson, Dunn & Crutcher, Los Angeles, CA, for appellants.

Douglas A. Millen, Steven A. Kanner, William H. London, Chicago, IL, J. Mitchell Clark, John Blaise Gsanger, William R. Edwards, William R. Edwards, III, Edwards Law Firm, L.L.P., Corpus Christi, Vernon N. Reaser, Jr., Law Office of Vernon N. Reaser, Jr., Victoria, Luther H. Soules, III, Robinson C. Ramsey, Sara Murray, Soules & Wallace, San Antonio, for appellees.

Before Justices YAÑEZ, CASTILLO and GARZA.

## OPINION

Opinion by Justice GARZA.

DaimlerChrysler Corporation has filed and argued an interlocutory appeal with this Court challenging the trial court's certification of two nationwide classes for purposes of suing DaimlerChrysler on claims arising out of its design, manufacture, marketing, and sale of automobiles equipped with defective seatbelts. On appeal, DaimlerChrysler argues that the certification orders must be reversed. We reverse and remand.

### Background

The plaintiffs are owners of DaimlerChrysler automobiles equipped with Gen–3 seatbelt buckles, which they allege suffer from a design defect that renders them unreasonably dangerous and unfit for use in automobile passenger restraint systems. The plaintiffs claim that DaimlerChrysler knew or should have known about this defect but did nothing to cure it.

None of the plaintiffs has suffered physical injury. None has flown through a windshield or slammed into a dashboard on account of the Gen–3's failure. Similarly, none alleges that the Gen–3 has caused any external property damage. The two certified classes specifically exclude all plaintiffs who have suffered physical injury or property damage caused by the Gen–3. The classes are limited to owners whose losses are solely economic. The precise definitions of the classes are quoted below.[1]

---

1. The first class consists of:

 All United States resident persons (except residents of California or Nevada) who own

## I. Standing to Sue

 Our jurisdiction over an interlocutory appeal of a class certification order is statutorily conferred. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(3) (Vernon Supp.2003). In its first issue, DaimlerChrysler argues that none of the class representatives or class members has standing to bring any of the claims alleged in the class petition. Standing to sue is a justiciability concern. *Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex.2001). A challenge to standing implicates the boundaries of constitutionally legitimate judicial action and, if successful, ultimately compels dismissal for lack of jurisdiction. *See, e.g., Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–46 (Tex.1993). Standing to sue is a prerequisite to class certification and is properly raised on an interlocutory appeal of a class certification order. *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 705–06 (Tex.2001). If the named plaintiffs lack individual standing we will dismiss the entire suit for lack of jurisdiction. *See id.* at 711. If the named plaintiffs demonstrate individual standing, whether those plaintiffs will then be permitted to represent the classes depends on whether rule 42's requirements are satisfied. *See id.* With these considerations in mind, we begin by determining whether our jurisdiction extends to the subject matter of this case. *See Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex.1999) ("Without subject matter jurisdiction, courts may not address the merits of a case.").

Standing focuses on the question of who may bring an action. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). The United States Supreme Court has explained that "[i]n essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).[2] A long-established line of Texas Supreme Court precedent explains and applies the requirement of standing to sue in Texas courts.[3] Several United States Supreme Court decisions have also influenced Texas

---

or lease new vehicles, model year 1993–2002, manufactured and/or sold by Daimler/Chrysler and equipped with Gen–3 seat belt buckles ... [excluding] any person who has an action for damages for personal injury or death or property damage against Defendants.

The second class consists of:

All United States resident persons (except residents of California or Nevada) who own or lease used vehicles, model year 1993–2002, manufactured and/or sold by Daimler/Chrysler and equipped with Gen–3 seat belt buckles ... [excluding] any person who has an action for damages for personal injury or death or property damage against Defendants.

**2.** *See generally* Myriam E. Gilles, *Representational Standing: U.S. ex rel. Stevens and the Future of Public Law Litigation*, 89 Calif. L.Rev. 315, 316–17 (2001) ("Standing is a doctrine of justiciability.... [It] concentrates on the status of the litigants rather than the

issues in dispute, and asks whether an individual plaintiff has a sufficient stake in the outcome of a matter to justify his right to litigate the issue in federal court.") (internal footnotes omitted) (citing *Flast v. Cohen*, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (finding that "when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable")).

**3.** *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984); *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex.1976); *Bd. of Water Eng'rs v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722, 724–25 (1955); *Mitchell v. Dixon*, 140 Tex. 520, 168 S.W.2d 654, 656 (1943); *Yett v. Cook*, 115 Tex. 205, 281 S.W. 837, 841 (1926); *Harding v. Comm'rs' Court of McLennan County*, 95 Tex. 174, 66 S.W. 44, 45 (1902); *City of San Antonio v. Stumburg*, 70 Tex. 366, 7 S.W. 754, 755–56 (1888).

jurisprudence on standing to sue, *see, e.g., Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (deferring to "the more extensive federal jurisprudential experience of the federal courts" on the subject of standing), but such influence is not a matter of federal preemption. *Perry*, 66 S.W.3d at 249 ("The United States Supreme Court has said that 'state courts are not bound to adhere to federal standing requirements' ") (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 617, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (noting that the constraints of Article III of the U.S. Constitution do not apply to state courts)). Such deference exists by exclusive decree of the Texas Supreme Court. *See id.* Notwithstanding Texas' respect for the federal courts' "more extensive jurisprudential experience" on the issue of standing, *see, e.g., Tex. Ass'n of Bus.*, 852 S.W.2d at 444, some commentators have described the rules of federal standing as a "recent phenomenon." *See, e.g., Cass R. Sunstein,*

*What's Standing After* Lujan? *Of Citizen Suits, "Injuries," and Article III*, 91 MICH. L.REV. 163, 169 (1992).[4] Thus, at times, the Texas Supreme Court has declined to apply federal precedent, relying instead on Texas jurisprudence to decide issues of standing. *See, e.g., W. Orange–Cove Consol. Indep. Sch. Dist. v. Alanis*, 107 S.W.3d 558, 583–84 (Tex.2003) ("The dissent does not explain why any difference between Texas law and federal law [on standing] is reason enough for us not to follow our own recent precedent."). Accordingly, in evaluating the arguments before us, we review the requirements of standing as explained by the Texas Supreme Court, but we also pay deference to the United States Supreme Court by using its precedent to the extent that the Texas Supreme Court has declared it harmonious with our state's law. *See, e.g., Brown v. Todd*, 53 S.W.3d 297, 305 (Tex.2001) (looking "to the similar federal standing requirements for guidance").[5]

---

**4.** *Compare* Cass R. Sunstein, *What's Standing After* Lujan? *Of Citizen Suits, "Injuries," and Article III*, 91 MICH. L.REV. 163, 169 (1992) (footnotes omitted) ("The explosion of judicial interest in standing as a distinct body of constitutional law is an extraordinarily recent phenomenon."), Robert V. Percival and Joanna B. Goger, *Citizen Suits and the Future of Standing in the 21st Century: From* Lujan *to* Laidlaw *and Beyond: Escaping the Common Law's Shadow: Standing in the Light of* Laidlaw, 12 DUKE ENVTL L & POL'Y F. 119, 121 (2001) ("Standing to sue is a fairly recent concept in American jurisprudence, as several scholars have noted. 'Standing,' which is not mentioned in the Constitution, was not discussed in the context of Article III's 'case or controversy' requirement until 1944, and it was not until the 1970s that standing doctrine became widely used in the federal courts.") (footnotes omitted) *and* William A. Fletcher, *The Structure of Standing*, 98 YALE L.J. 221, 224–25 (1988) ("It is at least clear that current standing law is a relatively recent creation. In the late nineteenth and early twentieth centuries ... no general doctrine of standing existed. Nor, indeed, was the term 'standing' used as the doctrinal heading un-

der which a person's right to sue was determined.") (footnotes omitted), *with Ex parte Sterling*, 122 Tex. 108, 53 S.W.2d 294, 296 (1932) (dealing with standing), *Home Inv. Co. v. Strange*, 109 Tex. 342, 195 S.W. 849, 852 (Tex.1919) (same), *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037, 1041 (1916) (same), *Lindsey v. Terrell*, 100 Tex. 548, 101 S.W. 1073, 1074 (1907) (same), *Chicago, R.I. & T.R. Co. v. Halsell*, 98 Tex. 244, 83 S.W. 15, 15 (1904) (same), *Giddings v. Fischer*, 97 Tex. 184, 77 S.W. 209, 211 (1903) (same), *Whitmire v. May*, 96 Tex. 317, 72 S.W. 375, 376 (1903) (same), *and Colquitt–Tigner Min. Co. v. Rogan*, 95 Tex. 452, 68 S.W. 154, 155 (1902) (same).

**5.** Although federal jurisprudence on standing may be more extensively developed, even if not older, than that of Texas, discontent regarding its "incoherence" has been well-documented by legal scholars. *See, e.g.,* Fletcher, *supra,* at 221 ("It has been described as 'permeated with sophistry,' as 'a word game played by secret rules,' and more recently as a largely meaningless 'litany' recited before 'the Court ... chooses up sides and decides the case.' ").

In Texas, standing rests on two constitutional foundations: (1) the open courts provision and (2) the separation of powers clause. *See Todd*, 53 S.W.3d at 302; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Both sections are quoted in the margin.[6] The open courts provision directly imposes a requirement of standing by granting the right to sue in Texas courts only to those litigants suffering an injury. *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. The separation of powers doctrine, in contrast, indirectly imposes a standing requirement by prohibiting Texas courts from issuing advisory opinions, which is a proper function of the executive branch. *See id.*; *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442–43 (Tex.1998) (citing cases). Because an opinion rendered in a case brought by a party without standing would be only advisory, Texas courts interpret the separation of powers doctrine as barring such cases. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444. As the Texas Supreme Court has explained:

> The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties. An opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury. Texas courts, like federal courts, have no jurisdiction to render such opinions.

*Id.* (internal citations omitted).

Consistent with these constitutional underpinnings, standing to sue can be predicated upon either statutory or common-law authority. *See, e.g., Williams v. Huff*, 52 S.W.3d 171, 178–79 (Tex.2001). These two sources of standing, however, invoke different legal standards. *See id.* Unsurprisingly, common-law rules apply except where standing is statutorily conferred, in which case, the statute granting such authority and the case law interpreting it serve as the proper framework of analysis. *See, e.g., Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984) ("[The] general rule of standing is applied in all cases absent a statutory exception to the contrary."). Examples of cases appear in a footnote below.[7] The determination of

---

**6.** The open courts provision reads, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. 1, § 13. The separation of powers clause declares:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. 2, § 1.

**7.** For a sample of cases employing common-law rules of standing see: *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 556 (Tex.2000) (taxpayer standing to sue school district to enjoin future payments under contract with third party); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661–62 (Tex.1996) (standing to challenge constitutionality of statute); *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 626 (Tex.1996) (standing to challenge constitutionality of statute); *Tex. Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 517–18 (Tex.1995) (standing to challenge constitutionality of statute); *Osborne v. Keith*, 142 Tex. 262, 177 S.W.2d 198, 200 (1944) (taxpayer standing).

For some cases interpreting statutory grants of standing see: *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861–62 (Tex.2001) (standing to sue under Texas Family Code); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 384–85 (Tex.2000) (standing to sue under Texas Insurance Code); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 147 (Tex.1999) (standing to sue under Texas Labor Code); *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 146–48 (Tex.1994) (standing to sue under Texas Insurance Code); *Scott v. Bd.*

standing thus requires that we first decide whether any statutory authority exists for the individual claims asserted by the plaintiffs. *Cf. Huff*, 52 S.W.3d at 178 (noting that the general rule applies unless statutory authority for standing exists); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861–62 (Tex.2001) (deciding a challenge to standing under the provisions of the family code rather than using common-law rules); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555–56 (Tex.2000) (explaining that a plaintiff's standing is determined by reference to common-law rules where no statute otherwise confers standing).

 In this case, the named plaintiffs have alleged numerous causes of action against DaimlerChrysler based on the following theories: negligence, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act ("DTPA"),[8] breach of express warranty,[9] breach of the implied warranty of fitness for a particular purpose,[10] and breach of the implied warranty of merchantability.[11] Claims of negligence and negligent misrepresentation sound in the common-law of torts. *See Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) (declaring that damages for negligent misrepresentation can be recovered to the extent provided by section 552B of the Restatement (Second)

of Torts); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 78 (Tex.1977) (declaring that economic loss can be recovered under common law negligence). In contrast, claims based on Uniform Commercial Code ("UCC") warranties and DTPA violations are statutorily codified in the Texas Business and Commerce Code. Accordingly, we apply common-law rules for standing to the named plaintiffs' tort claims but look to the Texas Business and Commerce Code in deciding whether the plaintiffs have standing to bring claims based on DTPA violations and UCC warranties. *See, e.g.*, B*rown v. Bank of Galveston*, 930 S.W.2d 140, 143 (Tex.App.-Houston [14th Dist.] 1996) (determining whether plaintiff had standing to bring DTPA claim by applying relevant DTPA provisions and interpretative case law), *aff'd on other grounds by Brown v. Bank of Galveston*, 963 S.W.2d 511, 512 (Tex. 1998).

 Before proceeding to the merits of our respective jurisdictional inquiries, we note that for purposes of standing, as with other challenges to jurisdiction, we take the plaintiffs' allegations as true. *See Cantu v. Perales*, 97 S.W.3d 861, 862 (Tex. App.-Corpus Christi 2003, no pet. h.); *Mission Consol. Indep. Sch. Dist. v. Flores*, 39 S.W.3d 674, 676 (Tex.App.-Corpus Christi 2001, no pet.).[12] We consider

*of Adjustment*, 405 S.W.2d 55, 57 (Tex.1966) (statute granting standing to any taxpayer); *Estate of Teal*, —— S.W.3d ——, 2002 WL 484909, at *4-*5, 2002 Tex.App. LEXIS 2294, *15-17 (Tex.App.-Corpus Christi 2002, no pet.) (standing to sue under Texas Probate Code) *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 766-68 (Tex.App.-Corpus Christi 1999, pet. denied) (standing to sue under Texas Civil Practice and Remedies Code as survivor for wrongful death); *In re Marriage of Morales*, 968 S.W.2d 508, 511-12 (Tex.App.-Corpus Christi 1998, no pet.) (standing to sue under Texas Family Code).

8. Tex. Bus. & Com.Code Ann. § 17.50 (Vernon Supp.2002).

9. Tex. Bus. & Com.Code Ann. § 2.313 (Vernon Supp.1994).

10. Tex. Bus. & Com.Code Ann. § 2.315 (Vernon Supp.1994).

11. Tex. Bus. & Com.Code Ann. § 2.314 (Vernon Supp.1994).

12. *See generally Brown v. Todd*, 53 S.W.3d 297, 305 n. 3 (Tex.2001) ("Because standing is a component of subject matter jurisdiction, we consider . . . standing as we would a plea to the jurisdiction, construing the pleadings in favor of the plaintiff.") (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Tex. Ass'n of Bus.*, 852 S.W.2d at

evidence and review the substance of their legal claims only to the extent necessary to determine whether subject-matter jurisdiction over their case exists in Texas courts. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555 ("The court should, of course, confine itself to the evidence relevant to the jurisdictional issue."); *see also County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) ("In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry."). As the Texas Supreme Court explained recently:

> [B]ecause a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case. But [this] ... does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction. Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion.

*Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.

## A. Standing to Sue for Negligence and Negligent Misrepresentation

445); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 ("A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit.").

13. The "general test" was first expressly endorsed by the Texas Supreme Court in *Bd. of Water Engr's v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722, 724 (1955). *But cf. Garwood Irr. Co. v. Lundquist*, 252 S.W.2d 759, 761 (Tex.1952) (evidencing an even earlier formulation of the "general test"). In that

Standing to sue on the common-law claims of negligence and negligent misrepresentation must be determined by common-law rules. We turn to those principles now. Some of the most recent Texas Supreme Court cases on standing ask whether the plaintiff is "personally aggrieved." *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996) ("A plaintiff has standing when it is personally aggrieved."); *see also M.D. Anderson Cancer Ctr.*, 52 S.W.3d at 707–08 (holding that plaintiff's "lack of any actual or threatened injury prevents him from being 'personally aggrieved' such that he has any personal stake in the litigation"); *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex.2001) (noting, in a case involving the issue of capacity and not standing, that "a plaintiff has standing when it is personally aggrieved").

■ Whether a plaintiff is "personally aggrieved," in turn, depends on whether he or she meets the "general test" for standing. *See, e.g., Nootsie*, 925 S.W.2d at 662. The "general test" asks if "there is (a) a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Id.*; *see also Cornyn v. Andrews*, 10 S.W.3d 663, 669 (Tex.1999).[13]

■ Whether a plaintiff is "personally aggrieved" also depends on whether he or she has alleged an injury. *See, e.g., M.D.*

case, the supreme court held that San Antonio had standing to sue the Board of Water Engineers for a declaratory judgment regarding the constitutionality of a statutory provision that the Board was charged with enforcing. *See Bd. of Water Engr's*, 283 S.W.2d at 724. The Texas Supreme Court noted that a "real and practical controversy" existed and that "the judicial declaration sought would determine the controversy because it would decide whether or not the Board could enforce the statute." *See id.*

*Anderson Cancer*, 52 S.W.3d at 707–08. For instance, in *M.D. Anderson*, the Texas Supreme Court concluded that a plaintiff who had not alleged an injury did not have standing to sue for a judicial declaration that the defendant committed fraud. *See id.* The supreme court held that the plaintiff was not "personally aggrieved" because he was never actually defrauded. *Id.* In keeping with this principle, the "general test" for standing has been articulated in a three-pronged fashion, listing the injury requirement as a separate and distinct element. *Cf. Tex. Ass'n of Bus.*, 852 S.W.2d at 444 ("Standing is implicit in the open courts provision which contemplates access to the courts only for those litigants suffering an injury."). As the Texas Supreme Court recently declared, "under Texas law, standing limits subject matter jurisdiction to cases involving [1] a distinct injury to the plaintiff and [2] a real controversy between the parties, [3] which ... will be actually determined by the judicial declaration sought." *Todd*, 53 S.W.3d at 305 (citations omitted).

▇▇▇ Nevertheless, the Texas Supreme Court has also used another approach to common-law standing. Some recent decisions have asked whether the plaintiff has demonstrated a "personal stake" in the controversy. *See, e.g., In the Interest of B.I.V.*, 923 S.W.2d 573, 574 (Tex.1996) ("To establish standing, a person must show a personal stake in the controversy.").[14] Most such opinions have applied a "general rule" of standing, which questions whether the plaintiff has alleged some interest peculiar to it individually and not as a member of the general public. *See, e.g., Hunt*, 664 S.W.2d at 324.[15] But just as the injury requirement of the open courts' provision penetrated the "general test" for standing, *see Tex. Ass'n of Bus.*, 852 S.W.2d at 444, creating the three-pronged approach enumerated above, *see Todd*, 53 S.W.3d at 305, the injury requirement has also overcome the "general rule" of standing. *See, e.g., Blum v. Lanier*, 997 S.W.2d 259, 261 (Tex. 1999) (noting that the plaintiff must allege that the defendant's actions have caused him some special injury). Accordingly, the supreme court has recently announced the "general rule" thus: "[T]o have standing ... a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused

---

**14.** The United States Supreme Court has also discussed standing in terms of a plaintiff's "personal stake." *See, e.g., Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). In *Baker v. Carr*, the Court defined the question of standing as whether the plaintiff had alleged "such a *personal stake* in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends for illumination of difficult constitutional questions." *Id.* (emphasis added).

**15.** The "general rule" was originally articulated by the Texas Supreme Court in an 1888 decision, which explained:

We think it a principle established by the overwhelming weight of authority in the courts of all countries subject to the common law, that no action lies to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself. For a special damage resulting from the invasion of a right enjoyed by a party in common with the public, the law affords him a remedy by private action, but if the damages be only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians of the public interest.

*Stumburg*, 7 S.W. at 755. Throughout the twentieth century, the Texas Supreme Court continued to employ this precept, refining it into a doctrine of standing to sue. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555–56; *Blum v. Lanier*, 997 S.W.2d 259, 261–62 (Tex.1999); *Hunt*, 664 S.W.2d at 324; *Scott*, 405 S.W.2d at 56; *Mitchell*, 168 S.W.2d at 656; *Yett*, 281 S.W. at 841; *Staples v. State*, 112 Tex. 61, 245 S.W. 639, 642 (1922).

the plaintiff some particular injury." *Huff,* 52 S.W.3d at 178. This formulation emphasizes not only the need for injury but also causation. *Accord Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 ("There must be a causal connection between the injury and the conduct complained of.").

The continuing viability of both the "general test" and "general rule" evidenced by these Texas Supreme Court cases forces us to decide which measure of standing should apply to the named plaintiffs. The supreme court has used the "general test" for standing mostly (if not exclusively) in the context of declaratory judgment actions. *See Todd,* 53 S.W.3d at 305 (applying "general test" to city councilman who claimed that mayor usurped his authority); *Proctor v. Andrews,* 972 S.W.2d 729, 734 (Tex.1998) (applying "general test" to city that claimed statute impermissibly delegated legislative authority); *Nootsie,* 925 S.W.2d at 661–62 (applying "general test" to appraisal district that challenged the constitutionality of a statute it was charged with enforcing); *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 517–18 (Tex.1995) (applying "general test" to challenge regarding the constitutionality of statute); *Tex. Ass'n of Bus.,* 852 S.W.2d at 444 (applying "general test" to plaintiff association challenging a statute's constitutionality); *see also Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 626 (Tex.1996) (following *Garcia's* analysis on plaintiff's challenge to constitutionality of statute).

In contrast, the Texas Supreme Court has used the "general rule" of standing in a greater variety of situations, including declaratory judgment actions, *see Todd,* 53 S.W.3d at 302–03 (applying "general rule" of standing to voter asserting a claim for declaratory judgment against the mayor to protect the results of a city referendum), but mainly in cases brought by taxpayers, residents and other miscellaneous would-be litigants challenging the action or inaction of governmental and quasi-governmental bodies and officials. *See Bland Indep. Sch. Dist.,* 34 S.W.3d at 555–56 (applying "general rule" of standing to suit brought by taxpayers to enjoin school district from making payments to third party pursuant to an allegedly illegal lease-purchase finance agreement); *Blum,* 997 S.W.2d at 261 (applying the "general rule" to decide whether a qualified voter who signs a petition that initiates an election has standing to seek an injunction against the ballot proposition drafted by the city); *Hunt,* 664 S.W.2d at 324 (applying the "general rule" to a group of citizens who sought a writ of mandamus because lawsuits in which they appeared as plaintiffs were delayed for more than four years by the failure of the county commissioner's court to provide adequate courtroom space and personnel); *Scott v. Bd. of Adjustment,* 405 S.W.2d 55, 56 (Tex.1966) (applying the "general rule" to taxpayers who brought a suit against the city and board of adjustment to restrain the maintenance of a large hotel sign authorized by the board as a variance under the city zoning ordinance). *M.D. Anderson* appears to be one of the most recent Texas Supreme Court cases on standing to address a common-law tort claim, but it did so only in the context of an action seeking a declaratory judgment that the defendant's conduct amounted to fraud. *M.D. Anderson,* 52 S.W.3d at 706–08. Thus, it gives only limited direction regarding the proper test to determine standing to sue on common-law claims.

 The named plaintiffs in this case present claims that are conspicuously different than those of other plaintiffs whose standing has been examined in prior opinions of the Texas Supreme Court. They assert claims as consumers, not as taxpayers, residents, or voters; their

claims are against a business entity, not a governmental or quasi-governmental body or a public official; and they seek a monetary award for economic damages, not a declaratory judgment or injunctive relief. In short, DaimlerChrysler's challenge to standing does not fit within the holding of any decision ever rendered by the Texas Supreme Court. Consequently, we cannot use such precedent as authority in this case for choosing one standing formulation and then applying it without regard to the other. Instead, we will compare the substance of both formulations to determine their essential constitutional principles and then apply those principles to the named plaintiffs.[16] The injury requirement of the open courts' provision is an irreducible constitutional minimum for standing. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444. But cf. *Huff*, 52 S.W.3d at 179 (noting exception that taxpayers· can enjoin the illegal expenditure of public funds and need not demonstrate a particularized injury). Irrespective of whether standing is determined by reference to the "general test" or "general rule," the plaintiff must allege a distinct injury. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444. Accordingly, the

Texas Supreme Court has rearticulated both standards to reflect the universal applicability of the injury requirement. *See Todd*, 53 S.W.3d at 305 ("general test" with injury requirement); *Huff*, 52 S.W.3d at 178 ("general rule" with injury requirement).

 Essentially, the "general rule" and "general test" differ in that they do not take the same approach to ensuring enforcement of the constitutional prohibition against judicial advisory opinions. Specifically, the "general rule" requires that any alleged injury be causally connected to the defendant's conduct, whereas the "general test" demands that the plaintiff claim relief capable of redressing its injury. *Compare Huff*, 52 S.W.3d at 178 (General rule—"[The] defendant's actions [must] have caused the plaintiff some particular injury."), with *Bd. of Water Engr's*, 283 S.W.2d at 724 (General test—"[T]he judicial declaration sought would determine the controversy because it would decide whether or not the Board could enforce the statute."). We refer to these requirements as "causation"[17] and "redressability."[18] Because they both weed

16. In doing so, we note that the "general test" and "general rule" have become increasingly interrelated and overlapping in recent times. In *Nootsie*, for instance, the supreme court obliquely equated the "general rule" and "general test" by concluding that the plaintiff had alleged a "sufficient stake in the controversy to assure the presence of an actual controversy that the declaration sought will resolve." *Nootsie*, 925 S.W.2d at 662; see also *Proctor v. Andrews*, 972 S.W.2d 729, 734 (Tex.1998). Thus, under *Nootsie*, a plaintiff who meets the "general rule" of having a "sufficient stake" will also satisfy the "general test" of being "personally aggrieved." Subsequently, in *M.D. Anderson*, the Texas Supreme Court explained that a plaintiff who is not "personally aggrieved" cannot have a "personal stake" in a controversy. *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707–08 (Tex.2001). Under *M.D. Anderson*, then, it can be concluded that a plaintiff who

fails the "general test" of being "personally aggrieved" will also fail the "general rule" of having a "personal stake."

17. Although the requirement of causation appears expressly in the language of the "general rule," see, e.g., *Williams v. Huff*, 52 S.W.3d 171, 178 (Tex.2001), it is only implicit, at best, in the "general test," see, e.g., *Todd*, 53 S.W.3d at 307. That is, the determination of whether a "real controversy exists between the parties" must, on some level, ask whether the defendant is alleged to have caused the plaintiff's injury, but this is tacitly understood and not expressly stated.

18. The "general test's" heritage as a statutory grant of authority for declaratory judgment actions apparently influenced its articulation of the redressability requirement. *See generally Bd. of Water Engr's*, 283 S.W.2d at 724. After all, the "general test" does not ask about

out cases that would otherwise lead to impermissible judicial advisory opinions, we conclude that they are each distinct constitutional demands for standing and are, as such, applicable in all cases. *Accord Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("The injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision.").[19]

■ Thus, we conclude that in the absence of statutory authority, the constitutional minimum for standing requires that the plaintiff demonstrate a (1) distinct injury (2) caused by the defendant's actions, which (3) can be redressed by the relief requested. *See MET–Rx USA, Inc. v. Shipman*, 62 S.W.3d 807, 810 (Tex.App.-Waco 2001, pet. denied); *accord Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ("To meet the standing requirements of Article III, '[a]

plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' ") (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

DaimlerChrysler contends that the named plaintiffs do not have standing to sue in Texas courts because none claims to have suffered personal injury, property damage, or any legally cognizable economic loss. It argues that the alleged "tendency" of a vehicle or one of its component parts to fail does not present an actual, legally compensable injury in fact. According to DaimlerChrysler, "The [plaintiffs'] specious 'costs of repair' theory improperly replaces legal injury with a method of calculating damages that are only recoverable if the claimant has sustained a legal injury." Furthermore, their negligence and negligent misrepresentation claims are not legally cognizable be-

the "requested relief," as does the federal case law. *See, e.g., Raines v. Byrd*, 521 U.S. 811, 818–19, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). The general test asks about the "judicial declaration sought." *See Proctor*, 972 S.W.2d at 734. *But cf. Wilson v. Andrews*, 10 S.W.3d 663, 669 (Tex.1999) ("Lubbock and its city officials acting in their official capacities do have standing to assert these claims because they have alleged concrete injuries and have asked for *a remedy that, if granted, would end the controversy*.") (emphasis added).

19. After all, if the relief requested is not capable of redressing the injury alleged, any resulting judicial opinion would be only advisory. *See generally Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (discussing advisory opinions). Similarly, if the injury complained of by the plaintiff was not allegedly caused by the defendant, then, on the basis of the plaintiff's allegations, the proper parties would not be before the court and any resulting judicial opinion would be advisory and not binding. *See id.* Because the legislature cannot enlarge the jurisdiction of Texas courts to include the subject matter of advisory opinions, *see id.; accord Linda R.S. v. Richard D.*, 410

U.S. 614, 617 n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) ("It is, of course, true that Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions."), it is no mere prudential concern but a constitutional mandate that courts not issue such judgments. *But cf. Flast v. Cohen*, 392 U.S. 83, 100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("The question whether a particular person is a proper party to maintain ... [a particular] action does not, by its own force, raise separation of powers problems."). As the Texas Supreme Court noted in *Texas Ass'n of Business*:

[W]e have interpreted the Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011, to be merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions. *Firemen's Ins. Co.*, 442 S.W.2d at 333; *United Serv. Life Ins. Co. v. Delaney*, 396 S.W.2d 855, 863 (Tex.1965); *California Prods., Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780 (1960).

*Tex. Ass'n of Bus.*, 852 S.W.2d at 444.

cause those claims require an independent injury, not an economic loss to the subject of a contract. Finally, DaimlerChrysler argues that because the plaintiffs have alleged no manifest injury and have suffered no legally cognizable damages, they lack standing to sue and the trial court's class certification order should be reversed.

We construe DaimlerChrysler's position as advancing two primary lines of argument: (1) there is no injury; and (2) if there is an injury, it is not legally redressable. We examine these arguments in turn, deciding the issue of injury first. *Accord Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) ("The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise.").

### 1. Injury

█ In their live petition, the class representatives allege that they own automobiles designed, manufactured, and sold by DaimlerChrysler that were represented as not only satisfying but exceeding all applicable governmental and industry safety standards and regulations. Contrary to these representations, the plaintiffs claim that each of their automobiles actually came equipped with seatbelts whose reliability miserably fails the minimum level tolerated by both the federal government and the automobile industry at large. They allege that their seatbelts are subject to accidental release at any time, especially during collisions, and that they are thus rendered unreasonably dangerous and unfit for the ordinary use of restraining passengers. Because the alleged defect owes not to the manufacture but to the design of the buckle (specifically, a design incapable of reducing accidental release rates to a reasonable level), all Gen–3 buckles suffer from the same defect and all automobiles in which they are equipped are likewise unreasonably dangerous. In short, the injury alleged by each plaintiff is the absence of a working passenger restraint system in his or her DaimlerChrysler automobile.

But that is only part of the wrong alleged in this case and consequently, only part of the injury. According to the plaintiffs, DaimlerChrysler knew about this defect or should have known about it, and instead of warning automobile owners about the problem and discontinuing installation of the Gen–3 buckles or offering to repair or replace those already in use, DaimlerChrysler deceived and victimized the class members by disseminating print and broadcast advertisements extolling the safety virtues of its automobiles, representations which were false. Meanwhile, DaimlerChrysler continued manufacturing, distributing, and selling automobiles equipped with Gen–3 buckles. On this basis, the plaintiffs assert tort claims for the lost value of their automobiles, losses which they claim can be measured by the cost of installing new, non-defective seatbelts. They also claim relief for lost vehicle use during the time required to complete such replacement.

We turn to the case precedent on injury. The Texas Supreme Court's decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large. *Todd,* 53 S.W.3d at 302 (denying voter's standing because injury alleged was not unique to plaintiff). The Texas Supreme Court has also instructed that "we may look to the similar federal standing requirements for guidance." *See, e.g., id.* at 305. The United States Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute" and that the injury suffered must be "concrete and particularized." *Id.*

(quoting *Raines*, 521 U.S. at 819, 117 S.Ct. 2312 (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130)).[20]

In *Brown v. Todd*, the Texas Supreme Court adopted the approach of *Raines v. Byrd. See id.* It decided the issue of standing by looking for a "sufficiently particularized, personal injury to afford" the plaintiff standing. *See id.* In the instant case, the named plaintiffs have alleged injuries that are particularized to themselves individually as car owners, and they assert claims on behalf of themselves. They have thus satisfied the injury standards announced in *Todd.* We conclude that the plaintiffs have alleged more than a "generalized grievance" because they have demonstrated a "personal stake in the outcome" of this controversy. *Accord Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

We also conclude that the named plaintiffs have demonstrated an interest in a conflict distinct from that of the general public such that the defendant's actions have caused them some particular injury. Although members of the general public undeniably enjoy a common interest in safe transportation, the named plaintiffs, as owners of automobiles with allegedly defective seatbelts, have successfully demonstrated an interest distinct from that of the general public. Their interest concerns DaimlerChrysler's actions in designing, manufacturing, marketing, and selling automobiles equipped with dangerously defective seatbelts. Their injury is thus highly particularized and distinct.

Nevertheless, DaimlerChrysler cites *M.D. Anderson* and urges a similar result in this case. *See M.D. Anderson*, 52 S.W.3d at 707–11 (dismissing for lack of standing) (citing *DeSantis v. Wackenhut*, 793 S.W.2d 670, 688 (Tex.1990) (holding that common law fraud requires a showing that the plaintiff suffered injury)). In *M.D. Anderson*, the Texas Supreme Court concluded that a plaintiff who was not allegedly defrauded by the defendant could not sue for a declaratory judgment that the defendant's conduct amounted to fraud. *See id* at 707–08. In dismissing the plaintiff's claim for lack of standing, the Texas Supreme Court noted that common law fraud requires an injury and declared that even if the plaintiff was the intended victim of a completed fraud, he lacked standing because he was not actually defrauded. *See id.*

DaimlerChrysler contends that *M.D. Anderson* requires a similar result here: dismissal of the plaintiffs' claims for lack of standing because common law claims of negligence and negligent misrepresentation require an independent injury, not an economic loss to the subject of a contract. Apparently, DaimlerChrysler takes *M.D. Anderson's* reference to *DeSantis* as judicial authorization to investigate and decide the core factual allegations underlying a plaintiff's claim before trial and before completion of discovery under the guise of a jurisdictional challenge. We do not interpret *M.D. Anderson's* holding to be so invasive.

---

**20.** The Unites States Supreme Court has explained that "to invoke judicial power the claimant must have a 'personal stake in the outcome,' or a 'particular, concrete injury,' or a 'direct injury;' in short, something more than 'generalized grievances.'" *U.S. v. Richardson*, 418 U.S. 166, 179–180, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (internal citations omitted); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) ("[W]e have steadfastly adhered to the requirement that, at least in the absence of a statute expressly conferring standing, federal plaintiffs must allege *some threatened or actual injury* resulting from the putatively illegal action before a federal court may assume jurisdiction.") (footnote omitted and emphasis added).

As noted above, *M.D. Anderson* involved a declaratory judgment, not an actual claim for fraud. *See id.* at 706. In deciding the case, the Texas Supreme Court concluded that the plaintiff's "lack of any actual *or threatened* injury prevents him from being 'personally aggrieved' such that he has any personal stake in the litigation." *Id.* at 707–08. (emphasis added). This language is noteworthy because it demonstrates that the Texas Supreme Court used the "general test" for standing and not the elements of common-law fraud to determine standing. In other words, *M.D. Anderson* did not hold that the elements of common-law fraud are the same as the elements of standing to sue. It concluded that the plaintiff's "lack of any actual *or threatened injury*" was dispositive. *See id.* (emphasis added). If this conclusion had referred to the elements of common-law fraud rather than the requirements of standing, as DaimlerChrysler's arguments imply (if not declare), its logical extension would be that a "threatened injury" would suffice for recovery on a fraud claim. But the Texas Supreme Court has expressly held that fraud requires an actual injury. *See generally Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977) (enumerating the elements of common-law fraud). In fact, *M.D. Anderson* cites an opinion affirming that very proposition. *See M.D. Anderson*, 52 S.W.3d at 707 (citing *DeSantis*, 793 S.W.2d at 688).[21] Thus, we do not read *M.D. Anderson* as an invitation to address the legal and factual merits of a case in the guise of deciding a challenge to subject matter jurisdiction.

Because we conclude that the named plaintiffs have alleged an actual injury, we reject DaimlerChrysler's position to the extent it argues that *M.D. Anderson* compels reversal. Whether the named plaintiffs succeed in establishing a sufficient injury to recover on their common-law tort claims is a merits issue, of course, and it awaits further development. *See generally* Dante B. Gatmaytan, *The Illusion of Intergenerational Equity:* Oposa v. Factoran *as Pyrrhic Victory*, 15 Geo. Int'l Envtl. L.Rev. 457, 469 (2003).

DaimlerChrysler also argues that the alleged 'tendency' of a vehicle or one of its component parts to fail does not present an actual "injury in fact." Under federal law, standing requires "that the plaintiff have suffered an 'injury in fact'— an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). To be "judicially cognizable," the injured interest must be one that is "legally protected." *See Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. There must be a legally guaranteed right not to be injured in the fashion alleged by the plaintiff. *See* Anthony Clark Arend and Catherine B. Lotrionte, *Congress Goes to Court: The Past, Present, and Future of Legislator Standing*, 25 Harv. J.L. & Pub. Pol'y 209, 216 (2001). Moreover, the injury must be real and specific. *See id.*

DaimlerChrysler's argument is essentially that the allegations of the named plaintiffs' complaint fail to meet the second component of the injury-in-fact requirement because they do not demonstrate an "actual" injury. *See, e.g., Spear*, 520 U.S. at 167, 117 S.Ct. 1154. According to the

---

**21.** In passing, we note that the plaintiffs in *DeSantis* were actually allowed to try their fraud claim in a Texas court of law. *See DeSantis v. Wackenhut*, 793 S.W.2d 670, 688–89 (Tex.1990). After reviewing the defendant's successful motion for a directed verdict on the fraud issue, the Texas Supreme Court held, not that the plaintiffs lacked standing to sue, but that they had not proved their allegations of fraud as a matter of law. *See id.* A directed verdict in favor of the defendant was affirmed. *See id.*

named plaintiffs, however, their injury is "not conjectural or hypothetical" because it was manifest on the day each of them purchased a DaimlerChrysler automobile. An imminent injury suffices for standing. *See, e.g., M.D. Anderson,* 52 S.W.3d at 707–708 (searching plaintiffs' pleadings for any actual *or threatened injury* to confer the plaintiff with standing). We therefore overrule DaimlerChrysler's risk-of-injury argument.

In doing so, we note that the plaintiffs have alleged more than an imminent injury. "Risk of injury" is an inaccurate characterization of the harm alleged in this case. Each plaintiff claims an actual injury in the form of insufficient product value. According to the plaintiffs, DaimlerChrysler represented that the Gen–3 buckles were up to snuff, both by government standards and by those of the industry. They also claim that those representations were false and that DaimlerChrysler knew or should have known of their falsity. On the basis of these allegations, each plaintiff claims a concrete and particularized injury in fact sufficient to confer standing to sue.

For its part, DaimlerChrysler urges us to conclude that a product's tendency to malfunction, even a strong propensity to do so, cannot itself be a defect or an injury in fact in the absence of an actual malfunction. We will not answer this argument because it addresses the merits of the plaintiffs' case; it is not a threshold argument against standing. That is, the precise standard of defectiveness is a liability issue. Whether defectiveness turns on a mere probability of unlatching or is dependent on a number of manifested, unintentional unlatchings is not a question of standing. It can be answered only by applying binding Texas precedent to the facts before the trial court, facts which have yet to be developed in this case.

Before moving on, however, we will say this much: automobile safety belts present special reliability concerns. They are used for the emergency protection of human life, and unfortunately, an ordinary passenger has no way of knowing whether his or her seatbelt will actually perform until an unexpected moment of impact, when an unforeseeable collision forces reliance on the seatbelt's emergency protection. Wearing a seatbelt may bolster an expectation that it will perform in a time of need, but as the named plaintiffs argue, such use may also imbue a dangerously defective product with a false and misleading appearance of reliability. We see no requirement for an actual, failed emergency use of a seatbelt as a prerequisite for a suit based on alleged design defect.

Finally, DaimlerChrysler claims that there is no harm here because the named plaintiffs do not allege any out-of-pocket loss on account of their Gen–3 buckles. None of the plaintiffs claims to have repaired or replaced an allegedly defective buckle. According to DaimlerChrysler, they have thus suffered no loss. We disagree. A plaintiff need not expend additional money to sue for an economic loss arising from a sale involving harmful commercial misrepresentations. A plaintiff only needs to spend money once on a dangerously defective product to sue for its value, and the purchase of the good itself counts. In this case, the plaintiffs claim to have been duped on the safety and thus the value of their cars. Economic loss has already occurred, and each plaintiff alleges such loss. That is their injury in fact.

We hold that the plaintiffs have standing because they each have suffered a direct, concrete and particularized injury, which is actual and real. It is manifest and highly distinct. It is also accompanied by a present risk of horrendous injury and death, but the alleged injury itself (defective seatbelts) is not conjectural or hypothetical.

It is genuine and palpable. It is personal to them individually and is not shared by the public at large. It more than suffices to establish standing to sue in Texas courts.

### 2. Causation

DaimlerChrysler does not dispute causation, but because it is a constitutional element of standing, we will address it. *See, e.g., Huff,* 52 S.W.3d at 178 ("[The] defendant's actions [must] have caused the plaintiff some particular injury."). Federal jurisprudence asks whether the plaintiff's alleged injury is "fairly traceable" to the defendant's conduct. *See, e.g., Allen,* 468 U.S. at 757, 104 S.Ct. 3315 ("Respondents' second claim of injury cannot support standing because the injury alleged is not fairly traceable to the Government conduct respondents challenge as unlawful."). Texas precedent is in accord. *See, e.g., Huff,* 52 S.W.3d at 178. In this case, the named plaintiffs allege that DaimlerChrysler designed, manufactured, marketed, and distributed automobiles equipped with defective seatbelts. These defective seatbelts are the source of the named plaintiffs' injuries. That causal connection suffices.

### 3. Redressability

■■■ The final element for standing is whether the relief requested by the plaintiff will redress the alleged injury. *See, e.g., Todd,* 53 S.W.3d at 305.[22] The Texas Supreme Court has described the element of redressability as asking whether the requested remedy, if granted, would end the controversy. *See, e.g., Cornyn,* 10 S.W.3d at 669. In this case, the named plaintiffs have requested a monetary award for their economic damages. In *City of Tyler v. Likes,* 962 S.W.2d 489 (Tex.1997), the Texas Supreme Court concluded that monetary damages measured by the economic loss would be "an adequate and appropriate remedy for negligent harm to real or personal property." *Id.* at 496–97. The supreme court reasoned that "while few persons suffering serious bodily injury would feel made whole by the mere recovery of medical expenses and lost wages, many whose property has been damaged or destroyed will be entirely satisfied by recovery of its value." *Id.* We conclude that a monetary award measured by the plaintiffs' economic loss would end the controversy because it would fully compensate the named plaintiffs.

In sum, the named plaintiffs have satisfied the three fundamental constitutional requirements for standing to sue in Texas courts: injury, causation, and redressability. They have alleged a distinct injury caused by the defendant's unlawful conduct, and they have requested relief that, if granted, would end the controversy. We conclude that they are each personally aggrieved by DaimlerChrysler's conduct such that they have a personal stake in the outcome of this controversy. Furthermore, their concrete adverseness to the defendant's conduct sufficiently assures us that these are indeed the right parties to

---

**22.** *Accord Simon v. E. Kentucky Welfare Rights Org.,* 426 U.S. 26, 45–46, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ("The complaint suggests no substantial likelihood that victory in this suit would result in respondents' receiving the hospital treatment they desire."); *Warth,* 422 U.S. at 505–06, 95 S.Ct. 2197 ("But the record is devoid of any indication that these projects, or other like projects, would have satisfied petitioners' needs at prices they could afford, or that, were the court to remove the obstructions attributable to respondents, such relief would benefit petitioners."); *Linda R.S.,* 410 U.S. at 618, 93 S.Ct. 1146 ("If appellant were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution, at least in the future, will result in payments of support can, at best, be termed only speculative.").

litigate these issues. We conclude that a judicial opinion in this case would not be advisory but would bind the parties and decide their dispute, either for Daimler-Chrysler or for the named plaintiffs. Thus, we hold that the named plaintiffs have standing to sue on their common-law tort claims.

### B. Standing to Sue as Consumers under the Texas Deceptive Trade Practices Act

The named plaintiffs also have asserted claims against DaimlerChrysler for DTPA violations. To have standing to sue, DTPA plaintiffs must qualify as "consumers." *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706 (Tex.1983); *see also Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 274 (Tex.1995) ("Faircloth's lack of consumer status disposes of this issue."); *cf. Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 386–87 (Tex.2000) ("[Plaintiff's] Article 21.21 claims for violations of [the] DTPA ... require consumer status.").

The DTPA defines a "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 2002). DTPA consumer status requires that: (1) the plaintiffs must have sought or acquired goods or services by purchase or lease; and (2) the goods or services purchased or leased must form the basis of the complaint. *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex.1987). The Texas Supreme Court has explained that a "plaintiff establishes standing to sue under the DTPA in terms of her relationship to a transaction." *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 368 (Tex.1987); *see also Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d

705, 707 (Tex.1983) ("A plaintiff establishes her standing as a consumer in terms of her relationship to a transaction, not by a contractual relationship with the defendant").

In this case, the named plaintiffs acquired goods by purchase; they bought DaimlerChrysler automobiles. Their automobiles now form the basis of their complaint against DaimlerChrysler. Accordingly, we conclude that they have met the requirements for standing contemplated by the DTPA and its interpretative case law.

Nevertheless, DaimlerChrysler argues that the named plaintiffs have not demonstrated their standing because they have not identified any pecuniary loss. No Texas Supreme Court precedent is cited for this proposition, and to our knowledge, none exists. We therefore decline to adopt DaimlerChrysler's position.[23] The issue of DTPA standing asks whether the plaintiff is a consumer. We conclude that the named plaintiffs have demonstrated such status.

### C. Standing to Sue as Buyers under the Uniform Commercial Code

The named plaintiffs have also claimed relief for breach of UCC warranties, which arise under sections 2–313 (express), 2–314 (implied), and 2–315 (fitness) of the UCC. *See* TEX. BUS. & COM.CODE ANN. §§ 2.313–2.315 (Vernon 1994). Again, DaimlerChrysler has advanced several arguments against allowing the plaintiffs to pursue these claims. Before getting to them, however, we will first review the requirements for standing to sue on UCC warranty claims.

Notably, the Texas Supreme Court has never decided a plaintiff's standing to sue for breach of warranty under the Texas version of the UCC. *Cf. 3M v. Nishika*

**23.** Even if such a requirement existed for DTPA standing, we would conclude, based on the reasoning above, that the named plaintiffs have met it.

*Ltd.,* 953 S.W.2d 733, 737 (Tex.1997) (deciding such a challenge under Minnesota law, which held that "those who purchase, use, or otherwise acquire warranted goods have standing to sue [under Article 2] for purely economic losses"). To our knowledge, only two intermediate Texas courts of appeal have addressed the issue, and in both cases, the courts applied the common-law rules already discussed in this opinion. *See MET–Rx USA,* 62 S.W.3d at 810–12; *Hi–Lo Auto Supply, L.P. v. Beresky,* 986 S.W.2d 382, 386 (Tex.App.-Beaumont 1999, no pet.). In *Hi–Lo Auto Supply,* the Beaumont Court held that the plaintiff had standing to sue a hardware store for breach of warranty and other claims because he had alleged a "direct injury" and had thus established that there was a "real controversy." *See Hi–Lo Auto Supply,* 986 S.W.2d at 386. The terms "direct injury" and "real controversy" refer, of course, to the common-law rules for standing (a.k.a. the "general test"; a.k.a. the "general rule"), which the named plaintiffs have already met.

In the other case, *MET–Rx USA, Inc. v. Shipman,* the Waco Court concluded that the plaintiff lacked standing to sue for breach of warranties because the relief he requested, a declaratory judgment and injunctive relief, would not redress his injury, which arose from his discontinued use of the defendant's defective medication. *MET–Rx USA, Inc.,* 62 S.W.3d at 810–12. Importantly, *MET–Rx USA* was a declaratory judgment action, and its utility as a source of guidance for UCC standing is consequently limited. We already have concluded that the redressability element of standing to sue in this case is satisfied because a monetary award will completely redress the plaintiffs' injuries. *MET–Rx USA* presents no additional hurdles for UCC standing.

■ Even so, we understand that the UCC does not confer blanket authority to sue for breach of warranty. *See* Tex. Bus. & Com.Code Ann. § 2.714 (Vernon 1994). Under section 2–714, only a "buyer" may sue to recover economic damages for non-conformities of tender, including breaches of warranties. *Id.* Article 2 defines a "buyer" as a "person who buys or contracts to buy goods." Tex. Bus. & Com.Code Ann. § 2.103(a)(1) (Vernon Supp.2003). In this case, the named plaintiffs purport to be "buyers" of DaimlerChrysler's automobiles, an assertion which DaimlerChrysler has not disputed. They also allege that DaimlerChrysler's automobiles failed to conform to both express and implied warranties. On that basis, the plaintiffs claim standing to sue as buyers under the UCC. We agree, but DaimlerChrysler does not.

■ It argues that the named plaintiffs lack standing to sue on their implied warranty claims because they have not sustained any legally cognizable damages. According to DaimlerChrysler, "A plaintiff's claim for repair costs, like those asserted here, *in the absence of a malfunction* that has caused an injury to the plaintiff, the plaintiff's property or the product itself, cannot support any cause of action under any legal theory." Thus, it would seem that to have standing to sue for a breach of warranty, a buyer must suffer an actual "malfunction that has caused an injury."

But that adds a new and distinct element to the requirements for standing to sue: an actual malfunction. Daimler-Chrysler cites no Texas case law directly supporting this proposition. As a mere intermediate court of appeals, we have no authority to redefine and narrow our state's subject-matter jurisdiction in such a manner. Even if it were up to us, we would not do so because such a restriction would unjustifiably impair the ability of private parties to judicially enforce the terms of product quality embodied in their sales agreements.

The UCC facilitates the freedom of contract. *See* TEX. BUS. & COM.CODE ANN. § 1.102(b)(2) (Vernon 1994) ("Underlying purposes and polices of ... [the UCC] are to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties."). To this end, Article 2 of the UCC, which covers the sale of goods, permits parties to set their own terms of performance. *See generally id.* at § 1.102(c) ("The effect of provisions of this title may be varied by agreement, except as otherwise provided in this title terms."). Specifically, it allows parties to agree on a level of product quality below which a buyer will have recourse for breach of warranty. *See generally id.* at § 2.313. The UCC also allows the parties to disclaim all warranties. *See* TEX. BUS. & COM.CODE ANN. § 2.316 (Vernon 1994); *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 577 (Tex.1991) ("[T]he UCC creates an implied warranty of merchantability, and it also allows sellers to disclaim the warranty"). Thus, breach-of-warranty claims come in many varieties. In some instances, a successful claimant may allege no product malfunction at all, relying instead on the inferior quality of the goods to prove breach of warranty. *See, e.g., Microsoft Corp. v. Manning*, 914 S.W.2d 602, 608–09 (Tex. App.-Texarkana 1995, writ dism'd) (allowing breach of warranty claims involving software that destroyed data only in some cases). As the United States Supreme Court has explained:

A warranty claim ... means simply that the product has not met the customer's expectations, or, in other words, that the customer has received "insufficient product value." See J. White & R. Summers, Uniform Commercial Code 406 (2d ed.1980). The maintenance of product value and quality is precisely the purpose of express and implied warranties.

*E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 872, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (footnotes and citations omitted). Other buyers, in contrast, will suffer personal injury or property damage caused by a malfunctioning good. *See, e.g., Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex.1994) (allowing plaintiff to sue for defectively manufactured seatbelts under the UCC).

If we were to restrict the subject-matter jurisdiction of Texas courts to only cases involving malfunctioning goods, as DaimlerChrysler requests, we would unjustly curtail the freedom of contractual determination bestowed upon parties by the Texas legislature. Doing so would also eliminate causes of action explicitly codified in the Texas Business and Commerce Code. We have no Texas authority for doing so, and we are unconvinced that any contrary federal precedent on this issue warrants such action, as no independent federal law of sales exists. *Cf. Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Congress has no power to declare substantive rules of common law applicable in a State whether they be ... commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts.").

Although DaimlerChrysler cites federal cases interpreting state laws, such as the UCC, those cases have applied federal and not state rules of standing. *See, e.g., In re Air Bag Prods. Liab. Litig.*, 7 F.Supp.2d 792, 806 (E.D.La.1998) (deciding issue of standing to sue for Texas breach-of-warranty claims in federal court and making no reference to Texas precedent on standing to sue). In those cases, the courts determined whether they, as federal courts, had subject-matter jurisdiction. *See Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 318 (5th Cir.2002); *Garcia v.*

*Gen. Motors Corp.*, Civil No. B–98–155 (S.D.Tex. Mar. 22, 2002) (slip opinion). We are not bound by such decisions, *see e.g., Perry*, 66 S.W.3d at 249 ("The United States Supreme Court has said that 'state courts are not bound to adhere to federal standing requirements' "), and because these particular challenges to standing regard state law claims, we follow state precedent in resolving them. In passing, however, we note that DaimlerChrysler also cites several federal cases that do not actually involve any challenges to standing. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1015 (7th Cir.2002) (basing its decision to reverse class certification not on standing but on choice-of-law concerns); *In re Air Bag Prods. Liab. Litig.*, 7 F.Supp.2d at 795 (deciding case that involved no challenge to standing); *Lee v. GMC*, 950 F.Supp. 170, 171 (S.D.Miss.1996) (memorandum opinion) (same); *Martin v. Ford Motor Co.*, 914 F.Supp. 1449, 1451 (S.D.Tex.1996) (same); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 603 (S.D.N.Y.1982) (memorandum opinion) (denying class certification, without mentioning the doctrine of standing, because the predominance of common issues was defeated). Such opinions are ill-suited authority for jurisdictional challenges and we will not manipulate their holdings to fit the much narrower threshold issue of standing to sue. As we have already concluded, defective seatbelts are an injury sufficient to confer standing to sue in Texas courts.

In its remaining arguments, DaimlerChrysler claims that it has not actually breached any implied or express warranties and that the plaintiffs' claims are an insufficient basis for imposing liability against it. Although such contentions undoubtedly raise valid concerns from DaimlerChrysler's perspective, this appeal of the class certification orders is simply not the proper juncture for DaimlerChrysler to make its defense on the merits. We are not deciding the issue of liability today. We are deciding whether the named plaintiffs are entitled to litigate the issue of liability. Nevertheless, each of DaimlerChrysler's remaining arguments attacks the merits of the named plaintiffs' UCC warranty claims. Each implicates issues on which the parties have taken diametrically opposed positions. DaimlerChrysler does not use these arguments to challenge whether the named plaintiffs are the right parties to litigate the claims at issue, which is the essential question of standing. Instead, it claims that the plaintiffs lack standing because they cannot ultimately succeed on their causes of action.[24]

**24.** As one commentator recently noted in the federal context:

"Standing" and "cause of action" are two different concepts that are governed by separate provisions of the Rules of Court. Standing to sue revolves around the question of who the proper parties are in a suit. The "proper party" requirement is satisfied if it is alleged that petitioners and intervenors have sustained or are in danger of sustaining immediate injury resulting from the acts or measures complained of. One who is directly affected by and whose interest is immediate and substantial in the controversy has standing to sue. A party must show a personal stake in the outcome of the case or an injury to himself that can be redressed by a favorable decision, so as to warrant an invocation of the court's jurisdiction and to justify the exercise of the court's remedial powers on his behalf. . . . In contrast, the Rules of Court define a "cause of action" as "the act or omission by which a party violates a right of another." For a cause of action to exist, there must be: (a) a right in favor of the plaintiff, by whatever means and under whatever law it arises or is created; (b) an obligation on the part of the defendant to respect, or not to violate, such right; and (c) an act or omission on the part of said defendant constituting a violation of the plaintiff's right or a breach of the defendant's obligation to the plaintiff.

Such arguments lead to a gap in the case law. The Texas Supreme Court has never driven the doctrine of standing as far into the substance of a plaintiff's claim as DaimlerChrysler now urges. *Cf. Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 ("[Standing] does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction."). Although the jurisprudential void between such merits-based arguments for dismissal and the Texas Supreme Court's actual precedent on the issue of standing to sue could be bridged by narrowing the subject-matter jurisdiction of Texas courts, effectively forcing would-be plaintiffs to prove the essentials of their case before any trial court has authority to hear the merits of their claims, we lack authority and decline to do so.

 Texas courts have always had subject-matter jurisdiction over cases in which defendants are entitled to judgment as a matter of law, as DaimlerChrysler now claims to be. *See, e.g., Temple–Inland Prods. Corp. v. Carter*, 993 S.W.2d 88, 95 (Tex.1999) (affirming take-nothing judgment against plaintiffs). It has never been questioned or doubted that courts properly exercise jurisdiction in such cases by rendering judgment for the defendant and not by dismissing for lack of jurisdiction. *See id.* Thus, it is unsurprising that virtually none of the Texas authority relied on by DaimlerChrysler actually involves the issue of standing to sue. *See, e.g., Muñoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.) (affirming an award of summary judgment for the defendant without discussing standing on the grounds that "[t]he uncontroverted evidence establishes as a matter of law that both products, propane and ethyl mercaptan, were fit for ordinary purposes and complied with all warranties"). Instead, the defendant argues lack of standing based on cases in which the exercise of subject-matter jurisdiction was never even challenged and where standing was not discussed. We understand why. No authority exists for denying all but winning parties access to Texas courts.

We hold that the named plaintiffs have standing to sue on all causes of action asserted in their class petition.

## II. Choice of Law

 To maintain a class action in Texas, rule 42 requires that plaintiffs meet each of the requirements of 42(a) and at least one of the requirements under 42(b). Tex.R. Civ. P 42(a), (b); *Union Pac. Res. Group v. Hankins*, 111 S.W.3d 69 (Tex. 2003). As the Texas Supreme Court said in *Bernal*, "actual, not presumed, conformance with [the rule] remains ... indispensable." *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex.2000). Compliance with rule 42 must be demonstrated; it cannot merely be presumed. *Henry Schein v. Stromboe*, 102 S.W.3d 675, 691 (Tex.2002).

Here, the trial court found that the named plaintiffs had demonstrated compliance with all four of the initial requirements of 42(a), including (1) numerosity; that "the class is so numerous that joinder of all members is impracticable"; (2) commonality; that "there are questions of law or fact common to the class"; (3) typicality; that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy of representation; that "the representative parties will fairly and adequately protect the interests of the class." *See* Tex.R. Civ. P. 42(a). The court also

Dante B. Gatmaytan, *The Illusion of Intergenerational Equity: Oposa v. Factoran as Pyrrhic Victory,* 15 Geo. Int'l Envtl. L.Rev. 457, 469 (2003).

held that they met rule 42(b)(4) (predominance of common questions). *See* TEX.R. CIV. P. 42(b).

▮ The trial court performed no choice-of-law analysis regarding class claims originating outside Texas based on the following reasoning:

A class certification order need not address choice of law. This is especially true in this case which has been pending for nearly two years and still no party has met even the threshold burdens to apply another jurisdiction's law by (1) demonstrating a true conflict in laws based on conflicting governmental interests, (2) proving the material differences between various competing jurisdiction's substantive law, and (3) proving the competing jurisdiction's relevant contacts. In the absence of a proper choice of law motion, the Court will continue to presume, as it is entitled to presume, that the law of other jurisdictions is the same as Texas.

DaimlerChrysler argues that the trial court improperly burdened it with the duty of demonstrating potential variations in state law. DaimlerChrysler contends that the plaintiffs bear the burden of demonstrating the absence of conflicting state laws because it is the named plaintiffs' burden under rule 42(b)(4) to show that common questions of law predominate in order for class certification to be proper. We agree.

In *Henry Schein*, an appeal decided after the instant class certifications were ordered, the Texas Supreme Court reversed the certification of a nationwide class action on choice-of-law grounds. *See Henry Schein*, 102 S.W.3d at 697. It concluded that the plaintiffs had "wholly failed to demonstrate that Texas law should apply to so many of . . . [the class] claims that common legal issues predominate." *Id.* In doing so, it impliedly overruled the proposition that "a class certification order

need not address choice of law [issues]." It also placed the burden of establishing the appropriate law on representatives of nationwide classes who argue for certification by virtue of predominance. *See, e.g., Snyder v. Magana*, 94 S.W.3d 213, 240 (Tex.App.-Corpus Christi 2002, pet. filed). Certification in this case was based on predominance, and we conclude that *Henry Schein* therefore compels reversal.

Because the trial court still has significant pre-certification work to do on choice-of-law issues, we will not prospectively evaluate its compliance with rule 42 outside that context. On remand, the trial court may reach the conclusion that Texas law should apply because it is not in conflict with the rest of the nation, but it shall not do so on the same presumptive basis as before.

### Conclusion

DaimlerChrysler's remaining issues are OVERRULED. We REVERSE AND REMAND this case for further proceedings consistent with this opinion. All motions pending before this Court regarding this appeal are OVERRULED.