COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 TONY LABRADO
 AND SUNSET COACHES, INC.,
  
                             Appellants,
  
 v.
  
 COUNTY OF EL
 PASO, TEXAS AND LULAC PROJECT AMISTAD, INC.,
  
                             Appellees.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-02-00403-CV
  
 Appeal from the
  
 327th District Court
  
 of El Paso County, Texas
  
 (TC#2001-3329)
 
 




 

O
P I N I O N

El Paso County awarded two contracts
for transit services to LULAC Project Amistad,
Inc.  Thereafter, Sunset Coaches, Inc., a
disappointed bidder, and Tony Labrado, Sunset=s president, brought this suit
against the County and LULAC, challenging the awards of the contracts.  The trial court granted summary judgment in
favor of the County and LULAC.  We
dismiss in part, reverse and render in part, and reverse and remand in part.

Factual and
Procedural Background








In October 2000, the County issued a
request for bids in Bid Number 00-081 for operation of a rural transit system
to serve several upper valley communities of El Paso County.  The request for bids included the following
provisions that are relevant to this case:

$          The
successful bidder would become the operator of paratransit
vehicles already owned by the County;  

 

$          The
operator would provide all required maintenance on the County=s vehicles and all necessary labor, insurance, and
fuel; 

 

$          AThe operator must maintain a well-equipped garage with
appropriate Personnel to provide maintenance on the County vehicle(s);@ 

 

$          Each
bid Ashall list the number of employees and their job
classification . . . existing equipment and location of shop facilities, bus
barns and other transit operations;@ 

 

$          AThe operator shall have all necessary licenses issued
by appropriate state agencies to operate a transit system in the State of
Texas;@ 

 

$          The
contract would be let Ato the lowest responsible bidder, and the Commissioner=s Court reserve[d] the right to reject any and all
bids and waive technicalities [and] [o]nly bids that
conform to specifications@ would be considered; 

 

$          The
request for bids was a quotation inquiry only and implied no obligation on the
part of the County.

 

$          Each
bidder was required to sign and include with its bid a form that stated: AI propose to provide all labor, fuel, insurance, maintenance on vehicle(s) equipment . . . necessary to operate the
County=s
transit system . . . .@  

 

Both Sunset and LULAC submitted
bids.  Sunset=s bid price was $4,895 per month, and
LULAC=s bid price was $4,162.50 per
month.  The County awarded the contract
to LULAC.








In April 2001, the County issued a
request for bids in Bid Number 01-042 for operation of a rural transit system
to serve the same upper valley communities covered by Bid Number 00-081, as
well as several lower valley communities of El Paso County.   This request for bids contained the same
provisions as the request in Bid Number 00-081 listed above.  It also contained the following additional
provisions:

$          ABy submitting a bid, each bidder agrees to waive any
and all claims it has or may have against the County of El Paso, and its
officers, agents, and employees, arising out of or in connection with:  the documents, procedures, administration,
evaluation, or recommendation of any bid; the waiver by El Paso County of any
requirements under the bid documents or the contract documents; the acceptance
or rejection of any bids; and the award of the contract.@  (This
provision appeared in capitalized, bold lettering.)

 

$          Each
bidder was required to sign and include with its bid a form that stated:  ABy execution
of this bid, I hereby represent and warrant to El Paso County that I have read
and understood the Bid Documents and the Contract Documents and this bid is
made in accordance with the Bid Documents.@ 

 

Again, both Sunset and LULAC
submitted bids.  Sunset=s bid price was $19,500 per month,
and LULAC=s bid price was $19,395.83 per
month.  The County awarded the contract
to LULAC.

In September 2001, Sunset and Labrado filed this suit. 
They alleged that LULAC was not the lowest responsible bidder for either
contract because, contrary to the bid specifications, LULAC does not maintain a
garage for maintenance of the County=s vehicles, nor does it have the
Texas Department of Transportation registration that is required to operate a
transit system.  They further alleged
that Sunset does maintain a garage and does have the required registration.








Sunset and Labrado
sought a declaratory judgment that the County violated section 262.027(a) of
the Texas Local Government Code by awarding the contracts to LULAC, that the
contracts are void, and that the contracts should have been awarded to Sunset
because it was the lowest responsible bidder. 
Alternatively, they sought a declaration that Sunset=s and LULAC=s bids for Bid Number 01-042 were
identical and that the contract should have been awarded by drawing lots, as
provided for in section 262.027(b) of the Texas Local Government Code.  In connection with their declaratory judgment
claim, Sunset and Labrado requested an award of
attorney=s fees.  They also sought a temporary injunction to
halt performance under the contracts during the pendency
of this action and a permanent injunction to enjoin performance under the contracts
and award them to Sunset.  Finally,
Sunset sought damages for the lost profits it would have realized if the
contracts had been awarded to it.

The County filed a plea to the
jurisdiction, motion for summary judgment, and plea in abatement.  In its plea to the jurisdiction, the County
argued that none of the appellants= claims fall within the Texas Tort
Claims Act=s waiver of governmental
immunity.  In its motion for summary judgment,
the County made the same argument and also argued that by submitting bids, the
appellants waived their right to object if their bids were not selected.  In its plea in abatement, the County argued
that the appellants failed to present their claim to the Commissioners Court
before filing this suit.








LULAC filed a motion for summary
judgment.  Like the County, LULAC argued
that the appellants waived their right to object if their bids were not
selected.  It also argued that its bid
was responsive to the requests for bids, that it maintains a garage as required
by the requests for bids, and that it has all necessary licenses to operate a
transit system as required by the requests for bids.

The appellants filed a motion for
partial summary judgment, arguing that they were entitled to judgment as a
matter of law on all issues except for the amount of damages and attorney=s fees.  The trial court heard all three parties= motions together and later signed an
order denying the appellants= motion for partial summary judgment and granting the appellees= motions for summary judgment.  The court did not rule on the County=s plea to the jurisdiction or plea in
abatement.[1]

In April 2003, LULAC filed a motion
to dismiss this appeal for lack of jurisdiction.  LULAC argued that the appellants lack
standing and that the case is moot because the contracts have been
substantially performed.  We denied this
motion without a written order or opinion. 
In July 2003, the County filed a motion to dismiss the appeal for lack
of jurisdiction.  The County argued that
the appellants lack standing, that the case is moot, and that it has
governmental immunity from the claims asserted by the appellants.  We notified the parties that we would
consider the County=s motion to dismiss along with the merits of the case.  We turn to the issues presented in that
motion now.








Standing

Because it is a component of subject
matter jurisdiction, standing is an issue that may not be waived by the parties
and that may be raised for the first time on appeal by any party or the court
itself.  Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445-46 (Tex.
1993).  As a general rule, standing
consists of some interest peculiar to the plaintiff individually rather than as
a member of the public.  Hunt v. Bass,
664 S.W.2d 323, 324 (Tex. 1984).  This
general rule applies unless standing has been statutorily conferred on the
plaintiff.  Williams
v. Lara, 52 S.W.3d 171, 178 (Tex. 2001); El Paso County Hosp. Dist. v.
Gilbert, 64 S.W.3d 200, 202 (Tex. App.--El Paso 2001, pet. denied).  When standing has been statutorily conferred,
the statute itself serves as the proper framework for analysis.  DaimlerChrysler Corp. v.
Inman, 121 S.W.3d 862, 869 (Tex. App.--Corpus Christi 2003, pet. filed).  If a statute provides that any citizen or
taxpayer may bring an action, the plaintiff need only establish that he or she
falls within one of these categories to establish standing; it is not necessary
to establish an interest peculiar to the plaintiff.  Scott v. Bd. of Adjustment, 405 S.W.2d 55, 56-57 (Tex. 1966).

Injunctive Relief








The County Purchasing Act sets forth
the competitive bidding procedures that counties must follow.  See Tex.
Loc. Gov=t
Code Ann. '' 262.021-262.035 (Vernon 1999 & Supp. 2004).  Among other provisions, the Act requires a commissioners court to Aaward the contract to the responsible
bidder who submits the lowest and best bid@ or Areject all bids and publish a new
notice.@ 
Id. ' 262.027(a) (Vernon Supp. 2004).  The Act further provides that A[a]ny property tax paying citizen of the county may
enjoin performance@ of a contract made in violation of the Act.  Id. ' 262.033 (Vernon 1999).

It is undisputed that both Sunset and
Labrado pay property taxes to El Paso County.  The County concedes that section 262.033
confers standing on Labrado to seek injunctive
relief.  But the County argues that
section 262.033 does not confer standing on Sunset because, as a corporation,
it is not a citizen.  The County suggests
that corporations do not fit within the definition of Acitizen@ because they are not born or
naturalized, nor are they members of the political community who owe allegiance
to the community.  See Black=s Law
Dictionary 237 (7th ed.
1999).








The County also cites a legal
encyclopedia for the proposition that the word Acitizen@ does not ordinarily include a
corporation, unless the general purpose and import of the statute in which the
word is found seem to require it. 18 Am.
Jur.
2d Corporations ' 63 (1985).  However, this section continues by stating
that Athere is no absolute and inflexible
rule that a corporation cannot be deemed a citizen for certain purposes, and
statutory and constitutional provisions must be construed to determine whether
their benefits were intended to be conferred on corporations.@ 
Id.  And another
authority states, AStatutes referring to persons, residents or citizens,
generally include corporations within their meaning, especially when the intent
and purpose of the statute seem to require it . . . .@ 
8 William M.
Fletcher, Fletcher Cyclopedia of the Law of Private Corporations ' 4025, at 400 (2001).

The County Purchasing Act was enacted
for the benefit of the public, to protect taxpayers from fraud and favoritism
in the expenditure of government funds.  Securtec,
Inc. v. County of Gregg, 106 S.W.3d 803, 815 (Tex. App.--Texarkana 2003,
pet. denied).  The persons or
entities who are most likely to be aware of violations of competitive bidding
procedures are the bidders themselves.  See H&W Contracting, LLC v. City of Watertown, 633
N.W.2d 167, 172 (S.D. 2001).  As
the style of this case demonstrates, corporations are likely to be
bidders.  Therefore, including
corporations within the definition of Acitizen@ in section 262.033 serves the intent
and purpose of the Act.  See Fla.
Wildlife Fed=n v. State Dep=t of Env=t Regulation, 390 So.2d 64, 66, 68 (Fla. 1980)
(stating that Amost courts which have considered the
question have concluded that corporations are citizens for the purpose of
pursuing rights granted to citizens@ and concluding that a corporation
had standing under a statute allowing citizens to enjoin violations of
environmental laws); accord Okla. Pub. Employees Ass=n v. McCaleb, 827 P.2d 178, 179 & n.1 (Okla.
Ct. App. 1991) (statute granting standing to any Acitizen@ to enforce provisions relating to
hiring state employees); Sioux Falls Taxpayers Ass=n v. City of Sioux Falls, 7 N.W.2d 136, 138-40 (S.D. 1942)
(statute granting standing to Acitizen and taxpayer@ to challenge violations of
competitive bidding laws, including provisions requiring the awarding of
contracts to the lowest responsible bidder).








The County argues that common-law
taxpayer standing has been narrowly construed in Texas and the same principles
that apply to common-law taxpayer standing should apply to statutory taxpayer
standing.  See Williams, 52 S.W.3d
at 178-79 (noting that common-law taxpayer standing is a Alimited exception@ to the general rule requiring
particularized injury).  But the County
does not cite any case holding that corporations are ineligible for common-law
taxpayer standing.  At least one case indicates
that a corporation is eligible for taxpayer standing, although the issue was
not raised by the governmental entity.  See
Int=l Bank of Commerce v. City of Laredo, 608 S.W.2d 267, 270 (Tex. Civ. App.--San Antonio 1980, writ dism=d) (holding that a bank that claimed
it was the highest qualified bidder for a contract had standing to sue as a
taxpayer).  Moreover, one commentator has
opined that Aa corporation which is a taxpayer has
as much right as an individual to institute a taxpayers= suit.@ 
18 Eugene McQuillin, The Law of Municipal Corporations ' 52.12, at 24 (3d ed. 2003); see
also Tex. Bus. Corp.
Act Ann. art. 2.02A(2) (Vernon Supp. 2004) (granting corporations the
power to sue and be sued in the corporate name).

Declaratory Relief

We have concluded that both Labrado and Sunset have standing under section 262.033 to
seek injunctive relief.  Because we have
reached this conclusion, it follows that the appellants also have standing to
seek declaratory relief.  See Gilbert,
64 S.W.3d at 202-03.








In Gilbert, the plaintiffs
sought injunctive relief under a statute that allowed any person who owns
taxable property to enjoin the taxing unit from adopting a tax rate under
certain circumstances.  See id. at 201 & n.2.  We
held that because the statute conferred standing to seek injunctive relief, the
plaintiffs did not need to separately establish their standing to seek
ancillary declaratory relief under the Declaratory Judgments Act.  See id. at
202-03.  Accordingly, because section
262.033 confers standing on the appellants to enjoin performance of a contract
that violates the County Purchasing Act, they do not need to separately
establish standing to seek a declaration to the same effect.

To show that the appellants do not
have standing to seek declaratory relief, the County and LULAC rely on the
following general principles:  (1) a
shareholder does not have standing to seek redress of injuries suffered by the
corporation, see Murphy v. Campbell, 964 S.W.2d 265, 268 (Tex. 1997);
(2) a person who is not a party to a contract does not have standing to
challenge the contract, El Paso Cmty. Partners v.
B&G/Sunrise Joint Venture, 24 S.W.3d 620, 626 (Tex. App.--Austin 2000,
no pet.); and (3) a disappointed bidder has no property interest in the
awarding of the contract, see id. at
625-26.  We do not disagree with these
principles in general; they are simply irrelevant when a statute confers
standing.  See Williams, 52 S.W.3d
at 178; Scott, 405 S.W.2d at 56-57; DaimlerChrysler
Corp., 121 S.W.3d at 869; Gilbert, 64 S.W.3d at 202-03.[2]








Mootness

Like standing, mootness
is a component of subject matter jurisdiction. 
See Black v. Jackson, 82 S.W.3d 44, 51-52 (Tex.
App.--Tyler 2002, no pet.).  The
County argues that the appellants= requests for declaratory and
injunctive relief are moot because the contracts at issue in this case have
expired.

The contract arising from Bid Number
00-081 was effective from December 4, 2000 until August 31, 2001.  The contract arising from Bid Number 01-042
was effective from September 1, 2001 to August 31, 2002.  According to affidavits by the El Paso County
Judge and the El Paso County Purchasing Agent, the parties continued to operate
under the contract arising from Bid Number 01-042 on a month-to-month basis for
a period of time after its expiration date. 
In April 2003, however, the County issued a request for bids for a new
rural transit system contract.  The
Commissioners Court awarded this contract to LULAC, which was the only
bidder.  Performance under the contract
commenced on August 4, 2003 and is set to terminate on August 4, 2004, subject
to automatic renewal of the contract for two one-year terms, unless the County
elects not to renew.[3]








A suit to enjoin the performance of a
contract becomes moot after the contract has been fully performed.  See Hulett v.
West Lamar Rural High Sch. Dist., 149 Tex. 289,
290-91, 232 S.W.2d 669, 670 (1950).  When a request for injunctive relief becomes
moot because the action sought to be enjoined has been accomplished, a request
for declaratory relief also becomes moot. 
Speer v. Presbyterian Children=s Home & Serv.
Agency, 847 S.W.2d 227, 229 (Tex. 1993).  In some circumstances, however, a live claim
for attorney=s fees will prevent a suit for
injunctive and declaratory relief from becoming moot.  See Camarena v.
Tex. Employment Comm=n, 754 S.W.2d 149, 151 (Tex.
1988).

Live Claim for Attorney=s Fees








In Camarena,
farm workers challenged the constitutionality of a law that denied unemployment
benefits to most agricultural workers. 
The trial court rendered a declaratory judgment that the law was
unconstitutional and enjoined its enforcement. 
Although the court determined the amount of the farm workers= reasonable and necessary attorney=s fees, it concluded that sovereign
immunity barred recovery of the fees. 
While the suit was pending, the Legislature enacted a law that would
phase-in unemployment compensation for agricultural workers.  Thereafter, the trial court rendered a
modified judgment, declaring the old law unconstitutional and the new law
constitutional.  Id.
at 150; Tex. Employment Comm=n v. Camarena,
710 S.W.2d 665, 667 (Tex. App.--Austin 1986).  The court also enjoined the enforcement of
anything less than the new law.  Camarena, 754 S.W.2d at 150.  The Texas Employment Commission appealed the
modified judgment, arguing that the case was moot.  The farm workers brought a cross-point,
contending that the trial court erred in failing to award them attorney=s fees.  Id. at 150.

The supreme court
held that the claim for attorney=s fees prevented the case from being
moot because it was Aan integral part of the farm workers= claim and as such breathes life into
the appeal.@ 
Id. at 151.  The court vacated the injunctive portions of
the trial court=s judgment as unripe because they were based on speculation
that the government would attempt to enforce something less than the new
law.  Id. at
151-52.  But the court affirmed
the portions of the order granting declaratory relief.  Id. at 152.

In a later case, the supreme court limited the holding in Camarena.  See Speer, 847
S.W.2d at 229-30.  In that case,
the Presbyterian Children=s Home and Service Agency denied Speer a position as an
adoption worker because she was not a Christian.  Speer sued the Agency for unlawful
discrimination, seeking solely declaratory and injunctive relief.  The trial court rendered a judgment in favor
of the Agency, concluding that it was exempt from the discrimination claims
because it was a religious organization. 
Before the case was decided by the supreme court,
the Agency stopped offering adoption services and abolished the position sought
by Speer.  Id. at
228.








The supreme court
held that the case was moot, notwithstanding Speer=s claim for attorney=s fees.  The court seemed to distinguish Camarena, at least in part, on the ground that the
farm workers, unlike Speer, were successful in the trial court.  See id. at
229.  The court refused to hold that Aalthough a party has lost in the
trial court and on appeal, the possibility that Speer . . . might prevail
in [her] claim that the Agency is not a religious corporation in this court and
overcome the Agency=s other defenses on remand keeps the controversy alive.@ 
Id.  The court reasoned
that such a holding would Aignore[] the fact that Speer, who seeks only
injunctive and declaratory relief, can never show her entitlement to
such relief because the position of Senior Adoption Worker no longer exists and
the Agency no longer performs adoption services.@ 
Id.  The court concluded
that because Ainjunctive and declaratory relief are
unavailable, Speer could never be a prevailing party entitled to such relief
under the [Texas Commission on Human Rights] Act, even on retrial, and is thus
not entitled to recover her attorneys fees and costs.@ 
Id. at 229-30.  But see id. at 244 (Doggett, J.,
dissenting) (stating that the majority nonsensically modified Camarena to mean that Aa party prevailing in the trial court
but wrongfully denied attorney=s fees may appeal; a party who does not prevail, even if as a
result of the trial court=s legal error, may not appeal@).








Like Speer, the appellants were not
successful in the trial court. 
Nevertheless, we believe Speer is distinguishable.  Speer sought declaratory and injunctive
relief under the Texas Commission on Human Rights Act, which provides that only
prevailing parties may recover attorney=s fees.  See Tex.
Lab. Code Ann. ' 21.259(a) (Vernon 1996).  In this case, the appellants= claim for declaratory relief arises
from the Declaratory Judgments Act, which allows attorney=s fees to be awarded on an Aequitable and just@ basis.  Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997).  Under this statute, a party does not have to
prevail to be awarded attorney=s fees.  Barshop
v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 637
(Tex. 1996).  In Speer, the
supreme court emphasized that because Speer could
never be a prevailing party under the Texas Commission on Human Rights Act, she
could not be entitled to recover attorney=s fees.  847 S.W.2d at 229-30.  That cannot be said in this case.

Capable of Repetition Yet Evading
Review

Even if we are wrong in our
interpretation of Speer, we conclude that we have jurisdiction over this
case under the capable-of-repetition-yet-evading-review exception  to the mootness
doctrine.  This exception applies
when:  (1) the challenged action was too
short in duration to be litigated fully before the action ceased or expired;
and (2) a reasonable expectation exists that the same complaining party will be
subjected to the same action again.  Williams,
52 S.W.3d at 184.

The first requirement applies in this
case because the one-year-or-less terms of the contracts were too short to
allow full litigation through the trial and appellate stages before the
contracts expired.  The County and LULAC
argue that the first requirement does not apply because this case could have
been reviewed if the appellants had sought a ruling on their request for a
temporary injunction.  The appellees note that an order granting or denying a
temporary injunction is subject to an accelerated, interlocutory appeal.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(4)
(Vernon Supp. 2004); Tex. R. App. P.
28.1.  They therefore argue that this
case could have been reviewed before the contracts expired.  We disagree.








First, even if the trial court had
granted a temporary injunction, such an injunction would have merely stopped
performance under the contracts; it would not have stopped the contracts from
expiring by their own terms.  Second,
assuming review of the temporary injunction ruling could have been completed
before the contracts expired, such a review could not substitute for review of
the trial court=s final judgment.  At a
temporary injunction hearing, the merits of the underlying controversy are not
presented.  Tom
James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 882 (Tex. App.--Dallas 2003,
no pet.).  Such a hearing is not a
substitute for, nor does it serve the same purpose as a hearing on the
merits.  Southwest
Weather Research, Inc. v. Jones, 160 Tex. 104, 111, 327 S.W.2d 417, 421-22
(1959); Tom James, 109 S.W.3d at 884.  Concomitantly, the merits of the underlying
controversy are also not presented in the appeal of an order granting or
denying a temporary injunction.  Tom
James, 109 S.W.3d at 884-85.  We therefore conclude that whether the
appellants obtained a hearing on their request for a temporary injunction is
irrelevant to determining whether this case could have been Alitigated fully@ before the contracts expired.  Williams, 52 S.W.3d
at 184.[4]








The second requirement to establish
that an action is capable of repetition yet evades review also applies to this
case.  The appellees
argue that this requirement does not apply because Sunset did not submit a bid
the last time the County requested bids for the transit service.  The record reflects that Sunset operated the
County=s rural transit service for
approximately five years before these contracts were awarded to LULAC.   Moreover, the appellants claim that the
County=s award of the two contracts, one
right after the other, violated the County Purchasing Act in the same way.  These facts create a reasonable expectation
that the appellants will be subjected to the same action again.  See Securtec,
106 S.W.3d at 811 (applying the capable-of-repetition-yet-evading-review
exception to a claim for violation of competitive bidding statutes).[5]

Governmental
Immunity








Governmental immunity from suit
protects counties from lawsuits for damages absent legislative consent.  Travis County v. Pelzel & Assocs., 77 S.W.3d 246, 248 (Tex. 2002); Gen.
Servs. Comm=n v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001). 
Legislative consent to sue must be expressed in clear and unambiguous
language.  Gen. Servs.
Comm=n, 39 S.W.3d at 594.  Governmental immunity from suit defeats a
trial court=s subject matter jurisdiction.  Texas Dep=t
of Transp. v. Jones, 8 S.W.3d 636, 638-39 (Tex.
1999).

Damages

The appellants conceded during oral
argument before this Court that Sunset=s claim for damages is barred by
governmental immunity.  We agree.  The appellants had previously suggested that
legislative consent to sue may be found in the County Purchasing Act.  But the Act does not contain clear and
unambiguous language expressing legislative consent for a disappointed bidder
to recover damages for a violation of the Act. 
Therefore, governmental immunity bars the claim for damages.  See   Gen. Servs. Comm=n,
39 S.W.3d at 594; see also Securtec, 106
S.W.3d at 815-16 (concluding that the Act did not create an implied
right of action for disappointed bidders because the Act was enacted for the
benefit of the public, not for individual bidders); James L. Isham, Annotation, Public Contracts: Low Bidder=s Monetary Relief Against State or
Local Agency for Nonaward of Contract, 65 A.L.R. 4th 93 (1988) (stating
that the majority of courts have held that a disappointed bidder may not
recover damages for violation of a statute requiring the contract to be awarded
to the lowest responsible bidder).

Declaratory and Injunctive Relief








The County acknowledges that
governmental immunity is generally waived for declaratory relief under the
Declaratory Judgments Act and injunctive relief under section 262.033 of the
County Purchasing Act.  It argues, however,
that in this case immunity is not waived for declaratory or injunctive relief
because the appellants included a claim for money damages in their
petition.  The County relies on a line of
cases holding that a plaintiff may not circumvent governmental immunity by
disguising a claim for damages as a claim for equitable relief.  See Tex. Natural Res. Conservation Comm=n v. IT-Davy, 74 S.W.3d 849, 856 (Tex. 2002) (plurality opinion); Freedman
v. Univ. of Houston, 110 S.W.3d 504, 508 (Tex. App.--Houston [1st Dist.]
2003, no pet.); Nueces County v. Ferguson, 97 S.W.3d 205, 218 (Tex.
App.--Corpus Christi 2002, no pet.).  We
conclude that the cases cited by the County are inapposite.

In IT-Davy, a general
contractor sought damages from a state agency for breach of contract.  74 S.W.3d at 851-52.  The breach-of-contract claim was barred by
governmental immunity.  Id. at 856. 
The general contractor also sought a declaratory judgment regarding the parties= rights and obligations under the contract, and specifically
requested a declaration that the state agency owed the general contractor more
money under the contract.  Id. at 859. 
Noting that the general contractor was not asking for an interpretation
of a statute, the court concluded that the declaratory judgment claim was
merely an attempt to confer jurisdiction to decide the breach-of-contract
claim.  Id. at
859-60.  The court held that suits
seeking to impose contractual liabilities on the state cannot be maintained
without legislative consent, even if the suit is nominally one for a
declaratory judgment.  Id.
at 855-56.  Accordingly, the
Declaratory Judgments Act did not waive governmental immunity for the relief
sought by the general contractor.  Id. at 860.








In Freedman, the appellants
sued a university for breach of their employment contracts and also sought a
declaratory judgment concerning their rights under the contracts.  110 S.W.3d at 506.  The court held that the appellants could not
recast their contractual claim as an equitable claim to avoid getting
legislative consent to sue.  Id. at 508.

In Ferguson, an employee who
had been terminated by a county sued the county.   97 S.W.3d at 211-12.  The court noted that the petition made no
reference to declaratory relief.  Id. at 220. 
Although the petition did make a reference to injunctive relief, the
prayer for relief only requested damages. 
Id.  The court therefore
concluded that the suit was not for injunctive or declaratory relief, but for
monetary damages, for which the employee needed legislative consent to
sue.  Id. at
220-21.








The petition in this case separately
sets out claims for declaratory and injunctive relief.  The paragraph seeking declaratory relief
requests a declaration that:  (1) the
award of the contracts violated section 262.027(a); (2) the contracts are void;
(3) Sunset was the lowest responsible bidder for the contracts; and (4) the
contracts should have been awarded to Sunset. 
Alternatively, the appellants requested a declaration that the amounts
of the bids under Bid Number 01-042 were identical and that the contract should
therefore have been awarded by drawing lots, as provided for in section
262.027(b) of the County Purchasing Act. 
The paragraph seeking injunctive relief requested an order enjoining
enforcement of the contracts under section 262.033 and awarding the contracts
to Sunset.  The prayer for relief
repeated the requests for relief from each of these paragraphs.

This petition is distinguishable from
the one in Ferguson because it clearly requests declaratory and
injunctive relief.  It is also
distinguishable from the petitions in IT-Davy and Freedman
because the requests for declaratory relief are not merely disguised attempts
to confer jurisdiction over a breach-of-contract claim.  The petition does not even include a
breach-of-contract claim.  Instead,
unlike in IT-Davy and Freedman, this petition seeks the
interpretation of a statute, section 262.027(a).  As the County acknowledges, another statute,
section 262.033, waives governmental immunity to enjoin performance of a
contract made in violation of section 262.027(a), and the appellants sought
such an injunction.  None of the cases
cited by the County involved a suit in which the Legislature expressly granted
permission for the equitable relief sought.

Under the County=s interpretation of IT-Davy, Freedman,
and Ferguson, any time a plaintiff includes a claim for damages in a
suit against the government, immunity will bar the plaintiff from obtaining any
other relief, even if the Legislature has expressly waived immunity for the
other relief.  We decline to read the
cases that broadly.  We therefore
conclude that the appellants= claims for declaratory and
injunctive relief are not barred by governmental immunity.








The Summary
Judgment

Having determined that we have
jurisdiction over this case, we must determine whether the trial court erred by
granting the motions for summary judgment filed by the appellees
and by denying the motion for partial summary judgment filed by the appellants.

Standard of Review

We apply a de novo standard of
review to summary judgments.  Bowen v. El Paso Elec. Co., 49 S.W.3d 902, 904 (Tex.
App.--El Paso 2001, pet. denied). 
Summary judgment is proper only when the movant
shows that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law.  Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001); Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985); Bowen,
49 S.W.3d at 904; see also Tex. R. Civ. P. 166a(c).  In
reviewing a trial court=s decision to grant summary judgment, we resolve all doubts
against the movant and view the evidence in the light
most favorable to the nonmovant.  Shah, 67 S.W.3d at
842; Bowen, 49 S.W.3d at 904.








When both sides move for summary
judgment, and the trial court grants one motion while denying the other, we
review the summary judgment evidence presented by both sides, determine all
questions presented, and render the judgment the trial court should have
rendered.  Comm=rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); see
also Hallman v. Allstate Ins. Co., 114 S.W.3d 656, 659 (Tex. App.--Dallas
2003, pet. filed) (applying this rule when one party moved for partial summary
judgment).

Waiver

The appellees
both moved for summary judgment on the basis of waiver.  Waiver is the intentional relinquishment of a
known right.  Sedona
Contracting, Inc. v. Ford, Powell & Carson, Inc., 995 S.W.2d 192, 195
(Tex. App.--San Antonio 1999, pet. denied); R. Conrad Moore & Assocs. v.
Lerma, 946 S.W.2d 90, 93 (Tex. App.--El Paso
1997, writ denied).  Because it is
an affirmative defense, a defendant who moves for summary judgment on this
basis must conclusively establish waiver. 
Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 643 (Tex.
1996); Sedona, 995 S.W.2d at 195; City
of El Paso v. Higginbotham, 993 S.W.2d 819, 822
(Tex. App.--El Paso 1999, no pet.).

The appellees
argue that the appellants waived all their claims by submitting the bids.  They rely on Sedona and language in
the requests for bids.  In Sedona,
a school district issued an invitation to bid on a construction contract.  The invitation provided that the district
could reject any or all bids.  995 S.W.2d at 194.  It
also provided that by submitting a bid, a bidder Aagrees to waive@ any claim it has or may have against
the district and the architect Aarising out of or in connection with the administration,
evaluation, or recommendation of any bid; waiver of any requirements under the
Bid Documents; or the Contract Documents; acceptance or rejection of any bids;
and award of the Contract.@  Id.  The bid form provided that by submitting the
bid, the bidder acknowledged that it understood the bid documents.  Id. at 194-95.








Although Sedona submitted the lowest
bid, the district rejected it because the architectural firm concluded that
Sedona was not qualified for the project. 
Thereafter, Sedona sued the architectural firm for tortious
interference with business relations, defamation, business disparagement, and
negligence.  The architectural firm
argued that Sedona waived these claims by submitting a bid in response to the
invitation to bid containing the waiver language quoted above.  Id. at 195.  The court of appeals agreed.  Id. at 199.

Sedona contended that the waiver of
intentional torts violates public policy. 
The court held that public policy was not offended A[u]nder the
limited circumstances@ of the case for two reasons. 
Id. at 197.  First, the court noted that a disappointed
bidder may not recover damages from the government for failing to award the
contract to it because allowing such a recovery would run contrary to the
public interest.  The court reasoned that
allowing Sedona to recover from the architectural firm would likewise be
contrary to the public interest because it could inhibit candid discussion of bidders= qualifications.  Id. at 198. 
Second, the court concluded that by submitting its bid, Sedona consented
to the bidding process and the possibility of a negative assessment because the
bid documents indicated that the contract would be awarded on a competitive
basis to the lowest responsible bidder. 
When it submitted its bid, Sedona acknowledged that it understood the
bidding process and terms.  Id. at 198-99.








The County points out that as in Sedona,
both requests for bids in this case provided that the County could reject any
and all bids, the bid request under Bid Number 01-042 contained waiver language
that is almost identical to the waiver at issue in Sedona, and Sunset=s bid under Bid Number 01-042 had an
acknowledgment, as in Sedona, that Sunset understood the bid
documents.  The County argues that based
on this language and Sedona, both appellants have waived all the claims
asserted in this case.  We cannot agree
with this argument.

We first note that Labrado, as an individual, did not submit any bids.  We fail to see how any waiver language in the
bid documents can be binding on him individually.

More importantly, we agree with the
appellants that public policy precludes us from construing the waiver language
in Bid Number 01-042 as a waiver of the appellants= statutory right under section
262.033 to enjoin performance of a contract awarded in violation of the County
Purchasing Act.  As we have already
discussed, the Act was enacted for the benefit of the public, and the members
of the public who are most likely to be aware of violations of the Act are the
bidders themselves.  See Securtec, 106 S.W.3d at 815.  In H&W Contracting, the South
Dakota Supreme Court, citing decisions from several other states, declared:

[I]n
reality, few taxpayers are willing to shoulder the time and expense necessary
to pursue such an action [to challenge the award of a public contract].  On the other hand, a disappointed bidder is
intimately involved in the bid-letting process, will be familiar with any
irregularities, and can be expected to protect its interests.  A disappointed bidder is more likely, and
more able, to challenge a bid-letting process that violates the competitive
bidding laws, and thereby protect not only its own rights, but also those of
the public.  








633 N.W.2d at 172 (citations
omitted).  The County=s interpretation of the waiver
language would eviscerate section 262.033.

Although Sedona involved the
same language, it is clearly distinguishable from this case.  Sedona was seeking damages for itself, not an
injunction for the benefit of the public. 
Section 262.033 was not at issue. 
Moreover, the Sedona court recognized the importance of
supporting the competitive bidding laws. 
The court reasoned that allowing a disappointed bidder to recover from a
government consultant would be contrary to the public interest because it could
inhibit candid discussion about bids. 
Similarly, allowing the County to condition its consideration of every
bid on the bidders= relinquishment of 

their rights under section 262.033 would
be contrary to the public interest in enforcing the Act.

For these reasons, we conclude that
Sunset did not waive its right to seek injunctive and ancillary declaratory
relief under section 262.033 by submitting its bids.

Review of the Commissioners Court=s Decision

The appellants contend that LULAC was
not a responsible bidder under section 262.027(a) because it does not maintain
a well-equipped garage for maintenance of the County=s vehicles and does not have a
necessary license to operate a transit system in Texas.  Before we may consider the substance of these
contentions, we must determine what standard we should apply in reviewing the
Commissioners Court=s determination that LULAC was a responsible bidder.








LULAC argues that the Commissioners
Court=s determination may not be overturned
unless it is not supported by substantial evidence or was arbitrary and
capricious.  The appellants argue that
our review is not so limited.

The Texas Constitution establishes
the commissioners courts as the principal governing
bodies of counties.  Agan,
940 S.W.2d at 79. 
The powers and duties of commissioners courts
include aspects of legislative, executive, administrative, and judicial
functions.  Id.  As a general rule, a district court=s supervisory control over a commissioners court is limited to determining whether the
commissioners court has abused its discretion or acted illegally or
arbitrarily.  See id. at 80.

In Cameron County Good Government
League v. Ramon, the commissioners court
completely failed to seek competitive bids for one contract, awarded another
contract without giving adequate notice, and apparently awarded yet another
contract to a company simply because the company needed the business, even
though officials knew the company could not comply with the bid specifications.  619 S.W.2d 224, 226-29
(Tex. Civ. App.--Beaumont 1981, writ ref=d n.r.e.).  The court stated:

[I]n
determinations of fact and in discretionary determinations, judicial review of
acts of the Commissioners= Court is limited to finding the existence of
substantial evidence or to ascertain whether the action taken was arbitrary or
capricious. 

 

But, where a Commissioners= Court does not abide by a competitive bidding
statute, fails to observe county specifications, or otherwise does not observe
requirements enacted by the Legislature, the substantial evidence rule is not
involved.

 








Id. at 230 (citations omitted). 
The court further stated that the substantial evidence test does not
apply to an allegation that an essential notice was not given.  Id.

We cited Ramon in Collins
v. County of El Paso, 954 S.W.2d 137, 150-51 (Tex. App.--El Paso 1997, pet.
denied).  In that case, we first
considered whether the County complied with statutory notice requirements in a
solicitation for bids to purchase County land. 
One party argued that the description of the land in the notice was so
ambiguous that it amounted to a complete disregard of the statutory requirement
that the notice contain a description of the land.  Collins, 954 S.W.2d
at 150.  We cited Ramon for
the proposition that the substantial evidence rule is not involved when a
commissioners court fails to abide by a competitive bidding statute or other
statutory requirements.  Id.  We therefore concluded that Awith respect to the allegation
concerning the failure to provide an adequate description of the property, we
do not apply the substantial evidence rule and the deference it affords to the
decision-making process of county commissioners.@ 
Id. at 151.

We also considered in Collins
an allegation that the County had not obtained a valid appraisal of the land=s value.  See id. at
152.  Although it was undisputed that the
County obtained an appraisal, a party claimed that the appraisal underestimated
the land=s value.  Because the County did not altogether
disregard the statutory requirement to obtain an appraisal, we applied the
substantial evidence rule to the County=s choice of appraisals.  Id.








After examining Ramon and Collins,
we conclude that the substantial evidence/arbitrary and capricious test should
govern our review of the Commissioners Court=s decision in this case.  The statement in Ramon that the
substantial evidence test does not apply when a commissioners
court Adoes not abide by a competitive
bidding statute, fails to observe county specifications, or otherwise does not
observe requirements enacted by the Legislature@ must be read in the context of the
facts in that case.  The substantial
evidence test was not applicable under those facts because the award of the
contracts was facially illegal and arbitrary. 
Similarly, we did not apply the substantial evidence test to an
allegation that a statutory requirement was completely disregarded.  See Collins, 954
S.W.2d at 150-51.  But we did
apply the substantial evidence test to an allegation that a statutory
requirement was not adequately fulfilled. 
See id. at 152.

Applied literally, the statement in Ramon
would allow reviewing courts to give no deference to a commissioners
court=s decision whenever a violation of
the competitive bidding laws is alleged. 
This would be out of step with the general rule that a district court=s supervisory control over a commissioners court is limited to determining whether the
commissioners court has abused its discretion or acted illegally or
arbitrarily.  See Agan,
940 S.W.2d at 80.








In this case, the dispute centers on
whether LULAC was a Aresponsible@ bidder within the meaning of section 262.027(a).  Because this is a matter committed to the
discretion of the commissioners court, the
commissioners court=s decision should be reviewed only to determine whether it
was fraudulent, arbitrary, or an abuse of discretion.  See In re Appeal of
Associated Sign & Post, Inc., 485 N.E.2d 917, 923-24 (Ind. Ct. App.
1985); Brown v. City of Phoenix, 272 P.2d 358, 361-62 (Ariz. 1954); 10 Eugene McQuillin, The Law of Municipal Corporations '' 29.73.05, 29.83 (Thomas Evans
& Judith O=Gallagher
revs., 1999).

Responsibility and Noncompliance with
Specifications

AThe term >lowest responsible bidder= involves compliance with statutory
requirements relating to competitive bidding.@ 
Niles v. Harris County Fresh Water Supply Dist. No.
1A, 336 S.W.2d 637, 638 (Tex. Civ. App.--Waco
1960, writ ref=d).  The term Acompetitive bidding@ contemplates that each bidder will
bid on the same material terms and will receive fair and equal treatment.  Collins, 954 S.W.2d
at 151; Sterrett v. Bell, 240 S.W.2d
516, 520 (Tex. Civ. App.--Dallas 1951, no writ).[6]  Therefore, to be Aresponsible,@ a bidder must comply with the
material specifications of the requests for bids.  10 Eugene
McQuillin,
The Law of Municipal Corporations ' 29.73.05 (Thomas Evans & Judith
O=Gallagher revs., 1999); see also
Bodies by Lembo, Inc. v. County of Middlesex, 669
A.2d 254, 257 (N.J. Super. Ct. App. Div. 1996).








A bid that does not comply with all
the specifications may nevertheless be sufficient if it will substantially
furnish the services requested.  10 Eugene McQuillin,
The Law of Municipal Corporations '
29.65, at 452 (Thomas Evans & Judith O=Gallagher
revs., 1999).  To determine
whether a specific noncompliance constitutes a substantial, and hence nonwaivable irregularity, two criteria are applied:  (1) whether the effect of a waiver would be
to deprive the municipality of its assurance that the contract will be entered
into, performed, and guaranteed according to its specified requirements; or (2)
whether the specification is of such a nature that its waiver would adversely
affect competitive bidding by placing a bidder in a position of advantage over other
bidders or by otherwise undermining the necessary common standard of
competition.  Id. ' 29.65, at 453; see also SpawGlass Constr. Corp. v. City
of Houston, 974 S.W.2d 876, 885 (Tex. App.--Houston [14th Dist.] 1998, pet.
denied).

We turn now to consider whether LULAC=s bids complied with the
specifications and, if not, whether the Commissioners Court abused its
discretion or acted arbitrarily in waiving the specifications.

Well-Equipped Garage

Both requests for bids provided, AThe operator must maintain a
well-equipped garage with appropriate Personnel to provide maintenance on the
County vehicle(s).@    The appellants
assert that LULAC has not satisfied this requirement because it is undisputed
that LULAC does not operate a garage.








The appellees
argue that the word Amaintain@ in the requests for bids does not mean Aown@ or Aoperate,@ and therefore LULAC could comply with
this specification by obtaining maintenance for the County=s vehicles through third-party
contractors.  They further argue that
LULAC addressed this specification in both of its bids by including with its
bids the form prepared by the County that stated, AI propose to provide all labor, fuel,
insurance, maintenance on vehicles(s) equipment . . . necessary to operate the
County=s transit system . . . .@

Black=s Law Dictionary includes the
following definitions for Amaintain:@

1. To
continue (something). 2. To continue in possession of (property, etc.).  . . . . 4. To care for (property) for
purposes of operation[,] productivity or appearance;
to engage in general repair and upkeep. 

 

Black=s Law
Dictionary 965 (7th ed.
1999); see also Webster=s Ninth New
Collegiate Dictionary 718
(1986) (including the following definitions for Amaintain:@ Ato keep in an existing state,@ Ato support or provide for,@ to Abear the expense of,@ to Asustain@).

We also note that the requests for
bids required the bids to list the location of shop facilities.  Given this requirement and the definitions
recited above, the only reasonable interpretation of the requirement that the
bidder Amaintain a well-equipped garage with
appropriate Personnel to provide maintenance on the County vehicle(s)@ is that the bidder must have a
garage of its own.








We cannot accept the appellees= argument that LULAC responded to this specification by signing
the form that the County required to be included with every bid and that stated
that the bidder agreed to Aprovide all labor, fuel, insurance, maintenance on
vehicles(s) equipment . . . necessary to operate the County=s transit system . . . .@ 
If bidders could comply with the bid specifications merely by agreeing
to this general language, there would be no need to respond specifically to any
of the bid specifications.

One of the appellants= interrogatories asked the County
whether it attached Aparticular importance to the ability of the Contractor to
provide maintenance for the County=s vehicles.@ 
The County answered, AYes, it was/is important that the bidder
be able to properly and adequately maintain the County vehicles.@  
And the County acknowledges in its brief that it Awas concerned about the maintenance
of its vehicles.@

Because the County acknowledges that
the maintenance of its vehicles was a material part of the bids and LULAC=s bids completely failed to respond
to this specification, the County was deprived of the assurance that the
contract would be performed according to its specified requirements.  Moreover, the County=s decision to waive the requirement
that the bidder maintain a garage undermined the necessary common standard of
competition.  Other bidders, relying on
the plain language of the requests for bids, may not have submitted bids if
they did not maintain a garage. 








We conclude that the appellants
established as a matter of law that this was a material specification, that
LULAC wholly failed to respond to this specification, that LULAC was therefore
not a responsible bidder, and that the County=s decision to award the contracts to
LULAC in spite of its material noncompliance with the bid specifications was
arbitrary and an abuse of discretion.

Necessary Licenses

Both requests for bids provided, AThe operator shall have all necessary
licenses issued by appropriate state agencies to operate a transit system in
the State of Texas.@  The appellants assert
that LULAC has not satisfied this requirement because it is undisputed that
LULAC has not registered with the Texas Department of Transportation.

The Texas Transportation Code
provides that a Amotor carrier may not operate a commercial motor vehicle . .
. on a road or highway of this state unless the carrier registers with [the
Department of Transportation].@  Tex. Transp. Code
Ann. ' 643.051 (Vernon 1999); see also
id. ' 643.001(1).  The Department issues a Acertificate@ to registered motor carriers.  Id. ' 643.054(b) (Vernon Supp. 2004).

LULAC argues that the certificate
issued upon registration with the Department is not a Alicense,@ and therefore is not included within
the bid requests= requirement that bidders have all necessary licenses.  We disagree.








A Alicense@ is Apermission to commit some act that
would otherwise be unlawful; 
. . . [or] [t]he certificate or document evidencing such
permission.@ Black=s Law
Dictionary 931 (7th ed.
1999); see also Webster=s Ninth New
Collegiate Dictionary 688
(1986) (defining Alicense@ as  Apermission to act@). 
A Acertificate@ is a Adocument in which a fact is formally
attested@ or a Adocument certifying the bearer=s status or authorization to act in a
specified way.@ 
Black=s Law Dictionary 218 (7th ed. 1999).

The Transportation Code prohibits a
motor carrier from operating a commercial motor vehicle on a Texas road or
highway unless the carrier registers with the Department.  Thus, it is clear that the certificate issued
upon registration is a license within the definitions recited above.

The appellees
argue that Sunset=s own bids demonstrate that the term Anecessary licenses@ did not include registration with
the Department.  Sunset=s bids listed its registration with
the Department under the heading AIncluded but not entirely required by
the County of El Paso.@  There were several
other certificates listed under that heading, including certificates related to
interstate operations.  Therefore, it is
not clear that Sunset was asserting that registration with the Department was
not required.

The registration requirement does not
apply to Aa motor vehicle used to transport
passengers operated by an entity whose primary function is not the
transportation of passengers, such as a vehicle operated by a hotel, day-care
center, public or private school, nursing home, or similar organization.@ 
Tex. Transp. Code Ann. ' 643.002(4) (Vernon Supp. 2004).  It also does not apply to Aa vehicle operated by a governmental
entity.@ 
Id. ' 643.002(6).








The County argues that LULAC falls
within the exemption for entities whose primary function is not the
transportation of passengers.  However,
LULAC=s bids stated that it has been in the
ADemand/Response transportation
business for the past 24 years@ and that it has Agrown from a simple transportation
operation using private vehicles to a sophisticated transportation system
utilizing lift equipped vans and minibuses, a computerized scheduling program
and radio dispatcher system transporting over 100 mobility impaired individuals
on a daily basis throughout . . . El Paso County.@ 
This is some evidence that LULAC=s primary function is the
transportation of passengers.  The record
also contains evidence that LULAC engaged in other functions, such as providing
guardianship services.  Therefore, a fact
question exists as to what LULAC=s primary function is.

Both appellees
argue that LULAC falls within the exemption for vehicles Aoperated@ by a governmental entity.  The appellants argue that this exemption does
not apply because the vehicles are only owned, not operated by the
County; they are operated by LULAC.








Even if the vehicles owned by the
County and operated by LULAC are effectively Aoperated@ by the County for purposes of the
registration requirement, that does not necessarily
mean that LULAC was not required to register with the Department.  The registration fee is a flat rate of $100,
plus a $10 fee Afor each vehicle requiring registration.@ Id. ' 643.053.  The record reflects that LULAC owns some
vehicles and provides transportation services for entities other than the
County.  Therefore, accepting arguendo the appellees= interpretation of the exemption, the
exemption still would not apply to LULAC unless it only operates
vehicles for governmental entities.  It
is not clear from the record whether that is the case.

We conclude that a fact question
exists regarding whether LULAC was required to register with the Department;
whether it had all necessary licenses to operate a transit system in this
state; and whether its failure to register with the Department, if required,
amounted to a material noncompliance with the bid specifications.

Conclusion








For the reasons stated herein, the
County=s motion to dismiss is granted to the
extent that it seeks dismissal of Sunset=s claim for damages, and the claim
for damages is dismissed for lack of jurisdiction.  In all other respects, the County=s motion to dismiss is denied.  The trial court=s order denying the appellants= motion for partial summary judgment
and granting the appellees= motions for summary judgment is
reversed.  Judgment is rendered declaring
that the County of El Paso violated section 262.027(a) of the Texas Local
Government Code by awarding the contracts at issue in this case to LULAC
Project Amistad because LULAC was not a responsible
bidder in that its bid did not comply with the specification to maintain a
well-equipped garage with appropriate personnel to provide maintenance on the
County=s vehicles.  This cause is remanded to the trial court for
further proceedings regarding the appellants= request for a declaratory judgment
that LULAC was not a responsible bidder because it does not have all necessary
licenses issued by appropriate state agencies to operate a transit system in
this state and regarding the appellants= request for attorney=s fees.

 

SUSAN
LARSEN, Justice

March 18, 2004

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 











[1]Because
the court did not rule on the plea in abatement, the issue raised in that plea
is not before us.





[2]The
appellees also argue that the appellants lack
standing to seek damages.  Because of our
conclusion, discussed below, that the County has governmental immunity from the
damages sought in this case, we find it unnecessary to address the standing
argument as it relates to damages.





[3]The
County has filed verified copies of the contracts, along with the affidavits,
in this Court.  Although these documents
are not part of the appellate record, we have the authority to consider them
for purposes of determining our jurisdiction. 
See Tex. Gov=t Code Ann. '
22.220(c) (Vernon 2004).





[4]The
appellants did not file suit until September 4, 2001, several days after the
first contract expired.  The United
States Supreme Court has held that the capable-of-repetition-yet-evading-review
exception will not revive a dispute that became moot before the action
commenced.  Renne v. Geary, 501
U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288
(1991).  But that holding is not dispositive of the mootness issue
in this case because this suit was filed well before the second contract
expired and the issues arising from the award of the two contracts are the
same.





[5]The
appellants argue that this case also falls within the public-interest exception
to the mootness doctrine.  Although some Texas appellate courts have
applied this exception, the Texas Supreme Court has expressly declined to state
whether the public-interest exception is viable in this state.  See Fed. Deposit Ins.
Corp. v. Nueces County, 886 S.W.2d 766, 767
(Tex. 1994); Securtec, 106 S.W.3d at 811; Univ. Interscholastic League v. Buchanan, 848 S.W.2d 298, 304 (Tex. App.--Austin 1993, no
writ).  Because we
conclude that the case is not moot and is capable of repetition yet evades
review, we need not consider the applicability of the public-interest
exception.





[6]Effective
September 1, 2001, the County Purchasing Act expressly requires commissioners
courts to Aprovide
all bidders with the opportunity to bid on the same items on equal terms and
have bids judged according to the same standards as set forth in the specifications.@ 
Tex. Loc. Gov=t Code Ann. '
262.0225(a) (Vernon Supp. 2004).